In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00121-CR
______________________________


FELISA MCFARLAND, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 02F0583-202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Felisa McFarland appeals from her conviction for forgery. Three indictments were
tried together. McFarland pled guilty to the charges. The trial court sentenced McFarland
to eighteen months' imprisonment. The cases have been appealed separately.
Â Â Â Â Â Â Â Â Â Â Because the briefs and arguments raised therein are identical in all three appeals,
for the reasons stated in McFarland v. State, cause number 06-05-00119-CR, we likewise
resolve the issues in this appeal in favor of the State.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â February 1, 2006
Date Decided:Â Â Â Â Â Â Â Â Â February 23, 2006

Do Not Publish



nt-family: Times New Roman"> Johnson concedes that she did not serve an expert report under the former Section 74.351. 
Johnson contends instead that, because her action is not an HCLC, she is not required to serve the
expert report. See Parker v. CCS/Meadow Pines, Inc., 166 S.W.3d 509, 512 (Tex. App.--Texarkana
2005, no pet.) ("Section 74.351(a) applies only to healthcare liability claims."). The question, then,
is whether Johnson's claim constitutes an HCLC.

C. Standard of Review

 "Whether a cause of action advances a healthcare liability claim is a question of law to be
reviewed de novo . . . ." Id.; see also Lee v. Boothe, 235 S.W.3d 448, 451 (Tex. App.--Dallas 2007,
pet. filed); Boothe v. Dixon, 180 S.W.3d 915, 919 (Tex. App.--Dallas 2005, no pet.); cf. Garland
Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543-44 (Tex. 2004) (under predecessor statute, essentially
conducting de novo review, though not stating standard). But see Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (in case assessing adequacy of a filed report,
holding that abuse of discretion standard applies to expert report review).

D. HCLC: Safety Directly Related to Health Care? 

 An HCLC is defined by the statute as 

 a cause of action against a health care provider (2) . . . for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health care,
or safety or professional or administrative services directly related to health care,
which proximately results in injury to or death of a claimant, whether the claimant's
claim or cause of action sounds in tort or contract. 

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005). Omaha contends only that
Johnson's claim is a safety claim. (3) Johnson contends that it is not a safety claim directly related to
health care. 

 The phrase "directly related to health care" was added to the definition of an HCLC in 2003. 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, Â§ 10.01, 2003 Tex. Gen. Laws 847, 865. In addition
to adding that phrase, the Legislature also added the disjunctive phrase "professional or
administrative services" in the same clause. Id. The question is whether "directly related to health
care" modifies and restricts both "safety" and "professional or administrative services" or only the
latter. 

 There is no controlling authority interpreting whether a safety claim must now be directly
related to health care, (4) although two courts of appeals have concluded that it must. (5) See Christus
Health v. Beal, 240 S.W.3d 282 (Tex. App.--Houston [1st Dist.] 2007, no pet.); Valley Baptist Med.
Ctr. v. Stradley, 210 S.W.3d 770, 775 (Tex. App.--Corpus Christi 2006, pet. denied). For the
reasons that follow, we agree with our sister courts that have analyzed the question.

 When interpreting statutes, "we try to give effect to legislative intent." Fitzgerald v.
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999). To do so, we look first to the
plain, simple, and unambiguous language of the statute. City of San Antonio v. Tex. Attorney Gen.,
851 S.W.2d 946, 951 (Tex. App.--Austin 1993, writ denied); cf. Fitzgerald, 996 S.W.2d at 865-66. 
In starting our analysis with the Legislature's words, "[w]e may consider textual aids to construction
for the insight they may shed on how the Legislature intended that their words be interpreted. In
doing so, we look at the entire act, and not a single section in isolation." Fitzgerald, 996 S.W.2d at
866 (footnotes omitted). We approach the statutory text according to the rule that "[w]ords and
phrases shall be read in context and construed according to the rules of grammar and common
usage." Tex. Gov't Code Ann. Â§ 311.011(a) (Vernon 2005).

 The first rule of grammar that guides our construction is: "Modifiers should come, if
possible, next to the words they modify." William Strunk, Jr. & E. B. White, The Elements of
Style R. 20 (4th ed. 2000); see also Bryan A. Garner, Garner's Modern American Usage
523-24 (2003) (hereafter "Garner's") (the "true referent should generally be the closest appropriate
word"). This is similar to the last antecedent doctrine of statutory interpretation, which states that
"where no contrary intention appears, relative and qualifying words, phrases, and clauses are to be
applied to the immediately preceding words or phrase. Such words, phrases, and clauses are not to
be construed as extending to or modifying others which are more remoteÂ . . . ." 82 C.J.S. Statutes
Â§ 333 (1999) (footnotes omitted). 

 But, this rule is not inflexible. "Proximity isn't the only signal of what referent a word is
pointing to . . . ." Garner's at 523-24 (denoting number, gender, case, and syntactic strength of the
referent as considerations). The last antecedent doctrine of statutory interpretation similarly looks
to syntactic strength; it notes that where "several words are followed by a clause which is as much
applicable to the first and other words as to the last, the clause should be read as applicable to all." 
82 C.J.S. Statutes Â§ 333 (footnote omitted). 

 The modifying phrase "directly related to health care" follows several possible referents, all
disjunctive but not all separated by commas. We are further guided in interpreting which of these
words and phrases are the true referents by another rule of grammar: "When a conjunction joins the
last two elements in a series, a comma is used before the conjunction." The Chicago Manual of
Style R. 5.57 (14th ed. 1993). But see Garner's at 654 (noting that some grammarians disagree
that the penultimate entry in a series should be followed by a comma). Garner denotes a particular
circumstance in which the serial (final) comma is required: "When the members [of a series] are
compound, calling for and within themselves, clarity demands the final comma." Garner's at 654. 
Indeed, when list elements themselves contain two or more items, the "last two elements are
muddled if the comma is omitted." Id. at 303-04; see also David W. Ewing, Writing for Results in
Business, Government, and the Professions 358 (1974), quoted in Garner's at 654 (omission of the
serial comma allows the final entries to be "joined" or "read as one category"); cf. Ludwig v. State,
931 S.W.2d 239, 242 (Tex. Crim. App. 1996) (generally, "a comma should precede a conjunction
connecting two coordinate clauses or phrases in a statute in order to prevent the following qualifying
phrases from modifying the clause preceding the conjunction"). 

 The statute does use commas to separate the first two categories ("medical care, or health
care,") from the rest, but uses no other commas before the modifying phrase. The serial comma rule
and last antecedent doctrine suggest a reading of "safety or professional or administrative services"
as the compound final category. Accord Stradley, 210 S.W.3d at 775 (finding that "safety" and
"professional or administrative services" claims fall into the same class of claim because they are not
separated by commas). (6) 

 We find additional support for limiting "safety" by "directly related to health care" from
reading the definition of an HCLC in the context of the entire definitions section of the statute. The
phrase "directly related to health care" incorporates the statutorily defined term "health care." (7) 
"Health care," in turn, relates to acts or treatment for, to, or on behalf of a patient. Tex. Civ. Prac.
& Rem. Code Ann. Â§ 74.001(10) (emphasis added). In the definition of an HCLC, which otherwise
includes terms included in the definition of health care, only "safety" and "professional or
administrative services" could, if not limited, relate to the patient population generally--and not a
particular patient--or to no patient at all. (8) 

 Finally, we find additional support for this construction by looking at the definition of an
HCLC in the context of the entire Act, and not in isolation. The Legislature included specific
findings and statements of purpose when it amended and re-codified the previous MLIIA in 2003. 
Among these are a finding that there is a medical malpractice insurance crisis and a statement of
purpose to improve and modify the handling of an HCLC "in a manner that will not unduly restrict
a claimant's rights any more than necessary to deal with the crisis." Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, Â§ 10.11(b)(3), 2003 Tex. Gen. Laws 847, 884; see also Act of JuneÂ 2, 2003, 78th Leg.,
R.S., ch. 204, Â§ 10.11(a)(5), 2003 Tex. Gen. Laws 847, 884. The Legislature further stated that the
purpose of the Act is to "make certain modifications to the liability laws as they relate to health care
liability claims only and with an intention of the legislature to not extend or apply such modifications
of liability laws to any other area of the Texas legal system or tort law." Act of June 2, 2003, 78th
Leg., R.S., ch. 204, Â§Â 10.11(b)(7), 2003 Tex. Gen. Laws 847, 885. Given this context, we must
construe the limiting clause "directly related to health care" in such a way that we do not extend the
definition of an HCLC to other areas of tort law or in a manner unduly restrictive of a claimant's
rights, except as authorized. Accord Michael S. Hull, et al., House Bill 4 and Proposition 12: An
Analysis with Legislative History, Part Three, 36 Tex. Tech L. Rev. 169, 177 (2005) (noting that
the definition, through addition of "directly related to," "was narrowed in scope"). 

 Reading the Legislature's words in the context of the section and full statute, in accordance
with rules of grammar, we find that the phrase "directly related to health care" correctly and
unambiguously modifies each part of the last part of the definition, i.e., both "safety" and
"professional or administrative services." See Tex. Gov't Code Ann. Â§ 311.011 (Vernon 2005);
see also Stradley, 210 S.W.3d at 775 (holding same, and finding that to construe the statute
otherwise "would be an arbitrary and legislatively unauthorized expansion of the health care liability
statute"); and see Beal, 240 S.W.3d 282 (same). A safety claim must be "directly related to health
care" to be actionable as an HCLC. 

E. Analysis: Safety Directly Related to Health Care

 We turn now to determine whether Johnson's claim is a safety claim directly related to health
care. A plaintiff cannot recast an HCLC as another cause of action and so avoid the requirements
applicable to HCLCs. Diversicare, 185 S.W.3d at 851; Murphy v. Russell, 167 S.W.3d 835, 838
(Tex. 2005); Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 544 (Tex. 2004); Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994). In examining an alleged HCLC, "we examine the underlying
nature of the claim and are not bound by the form of the pleading." Diversicare, 185 S.W.3d at 847;
see also Sorokolit, 889 S.W.2d at 242; Parker, 166 S.W.3d at 512 (not bound by plaintiff's claim
characterization). A consideration that may assist in determining if a claim is an HCLC is whether
expert testimony from a medical or health care professional is necessary to prove the claim. See
Diversicare, 185 S.W.3d at 848; Rose, 156 S.W.3d at 544.

 Omaha contends, relying on Diversicare, that essentially all premises liability claims by
residents of twenty-four-hour-a-day nursing care facilities are safety claims directly related to health
care. (9) In Diversicare, the court examined negligence and contract claims against a nursing home for
several sexual assaults of one patient by another. The court noted that a "nursing home provides
services to its patients, often around the clock." Diversicare, 185 S.W.3d at 849. A nursing home's
services include "meeting the fundamental care needs of the residents." Id. (citing Tex. Health &
Safety Code Ann. Â§ 242.001 (Vernon 2001)). (10) The court noted that "[t]hese services are provided
by professional staff including physicians, nurses, nurse aides, and orderlies who care for the
residents." Id. at 849-50. The court, noting that lapses in the restraint of both residents was a factor
in the claim, determined that the essence of the sexual assault claims involved lapses in professional
judgment and treatment of both the claimant and the resident who assaulted her. Id. at 851.

 The court distinguished a hypothetical sexual assault against a visitor to a nursing home from
the fact of a sexual assault of one nursing home resident by another resident, noting that there "is an
important distinction in the relationship between premises owners and invitees on one hand and
health care facilities and their patients on the other. The latter involves health care." Id. at 850. The
court further distinguished the sexual assault in the case from a premises liability claim, stating that
a nursing home requires "health care staff" to "make judgments about the care, treatment, and
protection of individual patients . . . based on the mental and physical care the patients require" while
a premises liability claim involves a duty "of ordinary care with no general medical duty to diagnose
and treat." Id. at 850-51. 

 Despite the court's broad statement that the relationship between a health care facility and
its patients "involves health care," we do not read the Diversicare opinion to mean that all claims
by a nursing home resident against a nursing home are necessarily directly related to health care. 
Indeed, the court specifically rejected the characterization of a claim as an HCLC "simply because
the landowner is a health care provider." Id. at 854; cf. Terry v. Schiro, No. 01-07-00060-CV, 2007
WL 2132461, at *3 n.4 (Tex. App.--Houston [1st Dist.] July 26, 2007, pet. denied) (mem. op.)
("Health care liability claims are claims in which the liability derives from the allegedly substandard
delivery of health care--not from every aspect of a relationship to a health care provider or
facility."). In fact, the Texas Supreme Court set forth examples of non-HCLCs in a nursing home,
including inadequate security or negligent maintenance, with more particular examples such as "an
unlocked window that gave an intruder access to the facility or a rickety staircase that gave way
under her weight." Diversicare, 185 S.W.3d at 854.

 We find that Johnson's claims are more akin to the non-HCLC examples given in the
Diversicare opinion than to the sexual assaults in that case. The claims in Diversicare involved
determination of the proper restraint of nursing home residents. The restraint of nursing home
residents is specifically limited to those situations in which it is medically necessary, see 40 Tex.
Admin. Code 19.601(a) (a nursing home resident "has the right to be free from any physical or
chemical restraints . . . not required to treat the resident's medical symptoms"), and thus inseparable
from accepted standards of medical care. Johnson's claims do not stem from Omaha's treatment (or
lack of treatment) for, to, or on behalf of any resident, (11) but from alleged departures from standards
of safety, generally, in eradicating spiders on its premises. The assorted claims do not implicate a
medical duty to diagnose or treat. They seem to be, like a rickety staircase, premises liability claims
"of the most pedestrian nature." Stradley, 210 S.W.3d at 775. 

 Nonetheless, Omaha contends that Johnson's claims are HCLCs because of the necessity of
medical expert knowledge since "pest control at a nursing home is not within the purview of a lay
person." Omaha asserts, without evidence or authority, that the "frequency, dosage, areas of
application, and type of pesticide used in the presence of nursing home residents--many of whom
have a wide range of health care issues that would be affected by pesticide--is not within the
understanding of many pest control companies, let alone the average person." Omaha's conclusory
assertions do not persuade us that expert testimony from a medical or health care professional is
necessary to prove Johnson's claims. 

 We find support in the Texas Administrative Code for rejecting Omaha's claim of a medical
standard for pest control particular to nursing homes. The Code, as recognized in Diversicare,
regulates many areas of nursing home administration. Pest control is one of the regulated areas. (12) 
But despite these regulations, there is no statutory or regulatory specialized standard for the details
of a nursing home pest control program, only that there be a program. As opposed to the regulation
of resident restraint, which as we noted earlier the Code allows only if medically required, the
regulation of pests is not couched in medical terms. (13)

 We find that the mere fact of regulation does not mean that such regulation (or the regulated
area) is related to health care. Here, the pest control regulations do not themselves create an industry
safety standard that Johnson must prove has been violated, let alone a safety standard directly related
to health care. There is no indication in the record that nursing home pest control involves
"judgments made by professionals trained and experienced in treating and caring for patients and the
patient populations in their health care facilities." Diversicare, 185 S.W.3d at 850. There is no
indication pest control judgments are actually, as opposed to theoretically, based on the physical care
the patients require or implicate the medical duty to diagnose and treat. 

 Johnson presents "a premises liability claim in a health care setting that may not be properly
classified as a health care liability claim." Beal, 240 S.W.3d 282. Johnson's claims are neither
integral to nor inseparable from the health care and nursing services provided to Reed. There is no
medical expert report required to explain the standard of care or its breach. Johnson's claims are not
safety claims directly related to health care, not HCLCs, and not subject to the expert report
requirements of the former Section 74.351. 

 We affirm.





 Bailey C. Moseley

 Justice


Date Submitted: January 16, 2008

Date Decided: February 8, 2008

1. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 51.014(a)(9) (Vernon Supp. 2007) (interlocutory
appeal), Â§ 74.001(a)(13) (Vernon 2005) (defining HCLC). Section 74.351 addresses dismissal of
HCLCs for failure to file an expert report, see Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.351 (Vernon
Supp. 2007), though the current version applies only to a cause of action accruing after September
1, 2005. Although our analysis is not affected by the 2005 amendment, we apply the former version
of Section 74.351 in this case since the cause of action accrued before the effective date. See Act
of June 2, 2003, 78th Leg., R.S., ch. 204, Â§ 10.01, 2003 Tex. Gen. Laws 847, 875, amended by Act
of May 18, 2005, 79th Leg., R.S., ch. 635, Â§Â§ 1-3, 2005 Tex. Gen. Laws 1590, 1590.
2. A "health care provider" includes, under Chapter 74, a "health care institution," which
includes a nursing home. Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.001(12)(A)(vii), (11)(J) (Vernon
2005). 
3. Omaha has never attempted to characterize Johnson's claim under any other part of the
statute, e.g., a health care or professional or administrative services claim.
4. In 2005, the Texas Supreme Court interpreted a safety claim under the repealed statute. See
Diversicare Gen'l Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005). While the lead opinion does
not construe the amended statute, both the concurring and dissenting opinions do, coming to
different conclusions. See id. (Jefferson, C.J., concurring, and O'Neill, J., dissenting). 

 The repealed statute (the Medical Liability and Insurance Improvement Act (MLIIA)), at
Article 4590i of the Texas Civil Statutes defined a "health care liability claim" as


 a cause of action against a health care provider or physician for treatment, lack of
treatment, or other claimed departure from accepted standards of medical care or
health care or safety which proximately results in injury to or death of the patient,
whether the patient's claim or cause of action sounds in tort or contract.


Act of April 19, 1977, 65th Leg., R.S., ch. 817, Â§ 1.03(a), 1977 Tex. Gen. Laws 2039, 2041,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, Â§ 10.09, 2003 Tex. Gen. Laws 847, 884.
5. At least one other case has applied Diversicare to a safety claim accruing after the effective
date of the amended statute without acknowledging the changed statutory language and without
analyzing whether a safety claim must be "directly related to health care." See Devereaux v. Harris
Co. Hosp. Dist., No. 01-05-00706-CV, 2007 WL 852618, at *3-5 (Tex. App.--Houston [1st Dist.]
Mar. 22, 2007, no pet.) (mem. op.); see also In re Kiberu, 237 S.W.3d 445 (Tex. App.--Fort Worth
2007, orig. proceeding [mand. filed.]) (following Diversicare, without analyzing amended language,
in finding that sexual assault by hospital radiology technician, while conducting CT scan, was an
HCLC for purpose of considering Rule 202 order).
6. In his concurring opinion, Chief Justice Jefferson rejected modifying "safety" by "directly
related to health care" after concluding that doing so would also require modifying "medical care"
and "health care"--a result he labeled "redundant." See Diversicare, 185 S.W.3d at 861 n.4
(Jefferson, C.J., concurring). We disagree such a result is required. The rules of grammar and the
last antecedent doctrine suggest that the modifying phrase is not extended to the more remote entries
preceding the comma in which the modifying phrase is located (i.e., "medical care, or health care,")
since they are separated syntactically. 
7. "Health care" is defined under the statute as "any act or treatment performed or furnished,
or that should have been performed or furnished, by any health care provider for, to, or on behalf of
a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem.
Code Ann. Â§ 74.001(10) (Vernon 2005). 
8. Accord S.J. of Tex., 78th Leg., R.S. 5004 (2003) (senate sponsor of the 2003 revision bill
referenced the statutory definition of health care and explained that "the services must relate directly
to the treatment of a particular patient").
9. Similarly, Omaha states that a contract, the "sole purpose of which" is to provide health care,
governs its relationship with Reed so that any claim by Reed against Omaha must be an HCLC. We
are aware of no contract in the record. To the extent Omaha raises contract as a general argument
in support of categorizing any claims against a nursing home an HCLC, we note that Omaha has
presented no authority in support. To the extent Omaha relies on particular contractual terms relating
pest control to Reed's health care, we note that Omaha has provided no record citation. 

 For an issue to be properly before this Court, the issue must be supported by argument and
authorities and must contain appropriate citations to the record. See Tex. R. App. P. 38.1(h). An
inadequately briefed issue may be waived on appeal. See Fredonia State Bank v. Gen. Am. Life Ins.
Co., 881 S.W.2d 279, 284 (Tex. 1994) (discussing "longstanding rule" that point may be waived due
to inadequate briefing). Accordingly, we will not consider the contract issue. See id. 
10. The court listed, among other fundamental needs, "providing sanitary living conditions." 
Diversicare, 185 S.W.3d at 849 (citing 40 Tex. Admin. Code 19.901(1)).
11. The direct relation of a claim to the treatment of a patient or resident also distinguishes the
"faulty equipment" cases cited by Omaha. See, e.g., Clark v. Tirr Rehab. Ctr., 227 S.W.3d 256 (Tex.
App.--Houston [1st Dist.] 2007, no pet.) ("faulty equipment" claim for injury sustained by patient
engaged in physical therapy was recast HCLC for physical therapist's negligent supervision during
therapy); Devereaux, 2007 WL 852618, at *4 (paraplegic's safety claim for injury falling from stool
during transfer from examination bed to stool to wheelchair following an examination was recast
HCLC); Espinosa v. Baptist Health Sys., No. 04-05-00131-CV, 2006 WL 2871262, at *4 (Tex.
App.--San Antonio Oct. 11, 2006, pet. denied) (mem. op.) ("premises liability" claim for post-surgical patient's injuries when bed trapeze bar failed was recast HCLC for assembly, maintenance,
and use of the trapeze bar as prescribed by claimant's doctor and assembled by medical staff). In all
of these cases, the health care provider was actively engaged in the provision of health care to a
particular patient at the time of injury and the injury derived from the provision of that care (or
failures related to it). Cf. S.J. of Tex., 78th Leg., R.S. 5004 (claims must "relate directly to the
treatment of a particular patient"). 
12. See, e.g., 40 Tex. Admin. Code 19.309(1)(C) (nursing home must "maintain an effective
pest control program so that the facility is free of pests and rodents"); 40 Tex. Admin. Code
19.1701(8)(D) (same); see also 40 Tex. Admin. Code 19.323(e) (regulating the storage of
insecticides on a nursing home premises); 40 Tex. Admin. Code 19.324 ("Pest control services must
be provided by nursing facility personnel or by contract with a licensed pest control company."). 
13. Similarly, nursing home windows and stairways are regulated in the Code specifically for
safety, but not in medical terms. The regulation of these areas of a nursing home premises for safety
did not prevent the Texas Supreme Court from giving rickety stairways and unlocked windows as
examples of non-HCLCs. See Diversicare, 185 S.W.3d at 854.