GARLAND COMMUNITY HOSPITAL,
Petitioner,

v.

Debi ROSE, Respondent.

No. 02–0902.

Supreme Court of Texas.

Argued Nov. 5, 2003.

Decided Nov. 5, 2004.

Stephen L. Tatum, Cantey & Hanger, L.L.P., Fort Worth, for Christus St. Catherine Hospital.

Thomas S. Leatherbury, Vinson & Elkins, L.L.P., Dallas, for St Luke's Episcopal Health Sys.

P. Michael Jung, Christine Roseveare, Strasburger & Price, L.L.P., Dallas, Jo-

seph Marion Gregory, G. Michael Gruber, Julia F. Pendery, Yvette Jimenez Mabbun, Godwin Gruber, LLP, Dallas, for Garland Community Hospital.

Jay C. English, Laurie Luxton, English & Associates, P.C., Dallas, for Debi Rose.

Richard Warren Mithoff, Mithoff & Jacks, L.L.P., Houston, for Dolores Romero.

Chief Justice JEFFERSON delivered the opinion of the Court.

This action derives from Debi Rose's ("Rose") claim that Garland Community Hospital ("the Hospital") negligently credentialed a doctor who performed cosmetic surgery on Rose. We must decide whether a negligent credentialing claim is a health care liability claim as defined in the Medical Liability and Insurance Improvement Act ("MLIIA").[1] Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01 1977 Tex. Gen. Laws 2039–2053 (former Tex. Rev.Civ. Stat. art. 4590i), *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.[2] The trial court ruled that Rose's claims were health care liability claims under the MLIIA, and it consequently severed and dismissed those claims against the Hospital after finding that Rose's expert report did not satisfy the Act's requirements. The court of appeals reversed and remanded, holding that Rose's claims were not governed by the MLIIA. 87 S.W.3d 188, 193. We hold that a claim for negligent credentialing is a health care liability claim under the MLIIA. Accordingly, we reverse the court of appeals' judgment and remand to the court of appeals to determine whether Rose's expert report constituted a good faith effort to comply with the statute.

## I

## Background

In late 1998 and early 1999, Rose underwent various cosmetic surgeries performed by Dr. James Fowler ("Dr.Fowler") at the Hospital. Rose sued Dr. Fowler alleging that she suffered scarring and other permanent injuries due to his negligence in performing the surgeries.

Rose later added the Hospital to the suit after learning that the Hospital had received other patient complaints about Dr. Fowler. In her amended petition, Rose contended that the Hospital was both vicariously liable for Dr. Fowler's negligence and directly liable for its own negligence in credentialing Dr. Fowler to practice at the Hospital and permitting him to continue practicing after it learned of the other complaints. In support of her claims, Rose filed an expert report and supplemental expert report pursuant to section 13.01(d) of the MLIIA. *See* Tex.Rev.Civ. Stat. art. 4590i § 13.01(d).

---

**1.** This Court has never formally recognized the existence of a common-law cause of action for negligent credentialing, but we will assume for purposes of this case that such a claim exists. See generally St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 508 (Tex.1997) (discussing but not deciding whether we recognize a common-law cause of action for negligent credentialing); Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex. Gen. Laws 2325, 2335, repealed by Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6, 1999 Tex. Gen. Laws. 1431, 2439 (now codified at Tex. Occ.Code. § 160.010) (grant-

ing immunity to persons who, without malice, participate in medical peer review activities).

**2.** While this case was on appeal, the Legislature enacted House Bill 4 ("H.B.4") which repealed article 4590i and governs all health care liability claims filed on or after September 1, 2003. Act of June 2, 2003, 78th Leg., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 884 (now codified at Tex. Civ. Prac. & Rem. Code §§ 74.001–.507). Because former article 4590i continues to govern this case we will cite to the article.

The Hospital moved to dismiss Rose's negligent credentialing claims, asserting that Rose's expert reports were insufficient under the MLIIA as to those claims. The trial court granted the Hospital's motion to dismiss the claims and severed Rose's remaining claims into a separate action. Rose appealed, and the court of appeals reversed and remanded, holding that Rose's negligent credentialing claims were not "health care liability claims" governed by the MLIIA and that Rose therefore was not required to file an expert report. 87 S.W.3d at 193. We granted the Hospital's petition for review. 46 Tex. Sup.Ct. J. 1058 (Aug. 30, 2003).

## II

### The MLIIA

The MLIIA governs the adjudication of health care liability claims in Texas. The Legislature determined that an increase in the frequency and severity of health care liability claims had negatively affected the availability and affordability of health care in Texas. Tex.Rev.Civ. Stat. art. 4590i, § 1.02. Thus, the Legislature enacted the MLIIA to "reduce excessive frequency and severity of health care liability claims," and "make affordable medical and health care more accessible and available to the citizens of Texas." *Id.* § 1.02(b)(1), (5).

In light of that purpose, the MLIIA places several restrictions on bringing health care liability claims, including the requirement that a claimant timely provide each defendant with an expert report in order to proceed with the claim. *Id.* § 13.01(d), (e)(3).

For the MLIIA and its restrictions to apply, a claim must be a "health care liability claim." *See generally* Tex.Rev. Civ. Stat. art. 4590i. A "health care liability claim," as defined by article 4590i, is:

a cause of action against a health care provider[3] or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4).[4]

Plaintiffs cannot use artful pleading to avoid the MLIIA's requirements when the essence of the suit is a health care liability claim. *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998). To determine whether a cause of action falls under the MLIIA's definition of a "health care liability claim," we examine the claim's underlying nature. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 242

---

**3.** A hospital is a health care provider. Tex. Rev.Civ. Stat. art. 4590i, § 1.03(a)(3).

**4.** H.B. 4 amended the definition of "health care liability claim" as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code § 74.001(a)(13) (emphasis added to show addition). "Professional or administrative services" is defined as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." Id. § 74.001(a)(24). The parties disagree as to whether negligent credentialing claims would be covered under the amended statute. Because Rose's claims were filed prior to September 1, 2003, however, the amended statute does not apply.

(Tex.1994). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *See Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995). One consideration in that determination may be whether proving the claim would require the specialized knowledge of a medical expert. *See, e.g., Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 419 (Tex.App.–Corpus Christi 1999, no pet.); *but see Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex.1990) (expert testimony not needed to establish breach of medical duty where departure plainly within common knowledge of laymen).

## III

### Rose's Claims

■ Rose's claims fall under the MLIIA if the claims are "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(4) (defining "health care liability claim"). The court of appeals held that Rose's negligent credentialing claims did not fall into any of these categories and thus were not governed by the MLIIA. 87 S.W.3d at 191–93. We disagree. Rose's negligent credentialing claims are health care liability claims under the MLIIA because they involve claimed departures from accepted standards of health care.

The MLIIA defines "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex.Rev.Civ. Stat. art. 4590i, § 1.03(a)(2). The court of appeals held that, because the Hospital's act

of credentialing Dr. Fowler occurred before Rose was a patient, the credentialing act was not *"during* the patient's medical care, treatment, or confinement" and thus not covered under the MLIIA's definition of "health care." 87 S.W.3d at 192 (emphasis in original).

The court of appeals' strict temporal distinction does not comport with the realities of the credentialing process. Physician credentialing is an ongoing and continuous process, not a series of discrete events. It includes not only a hospital's initial decision to grant staff privileges, but also formal reevaluations, and continual monitoring and assessment of physician competence. Richard L. Griffith & Dewey W. Johnston, Texas Hospital Law: Administrative and Regulatory Law § 3.1.1 (3d ed.2003); *see also* Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions,* 73 Temp. L.Rev. 597, 611–12 (2000) ("The hospital and the medical staff have the responsibility to continuously review and monitor the professional performance of individual staff members and all medical services rendered at the hospital."). A patient's complaint about a credentialing decision is not directed solely to the hospital's *initial* decision to credential a physician, but also to the hospital's maintaining those privileges during the time of the patient's treatment, *for it is only during* that time that the patient could have been harmed by the negligent credentialing decision. Thus, a hospital's credentialing activities occur both before and *during* the treatment of a patient.

Rose's complaint is a case in point. She complains of acts and omissions that occurred, in significant part, during her treatment.[5] Specifically, Rose alleges that

5. Rose's petition alleges that the Hospital act-

ed with negligence, gross negligence, and

the Hospital acted negligently and maliciously in allowing Dr. Fowler to perform Rose's surgeries, in entrusting the operating room and other equipment to him, and in failing to suspend or affirmatively review his privileges. These decisions necessarily occurred during Rose's treatment. It is not necessary, however, to dissect Rose's claims into pre-treatment and post-treatment components. Regardless of when the acts occurred, the allegations all revolve around the same basic premise: that the Hospital put Rose at risk by allowing Dr. Fowler to treat her. It makes no sense to conclude that some credentialing claims are subject to the MLIIA and others are not, depending upon what point in time the credentialing decision occurred.[6]

The essence of the court of appeals' holding—that complaints involving a hospital's pre-treatment acts or omissions are not subject to the MLIIA—would have broad ramifications. Many of the direct functions performed by a hospital, including appropriate credentialing of its staff, originate in conduct occurring before a particular patient arrives at the hospital. *See, e.g., IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc., v. Mason,* 143 S.W.3d 794, 797 (Tex.2004) (alleging hospital negligently failed to promulgate adequate policies and procedures and failed to adequately train physicians and nurses); *Baptist Mem'l Hosp. Sys. v. Sampson,*

969 S.W.2d 945, 947 (Tex.1998) (alleging hospital negligently failed to properly instruct medical personnel in diagnosis and treatment of spider bites and failed to maintain policies regarding review of diagnosis); *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 364–65 (Tex.1987) (alleging hospital negligently failed to acquire proper facilities to monitor blood gases of premature infants). Thus, applying a rigid temporal distinction would create a large loophole, rendering the MLIIA inapplicable to a substantial number of claims against health care providers. Such a result would undermine the MLIIA's express purpose of reducing the frequency and severity of health care liability claims. *See* Tex.Rev.Civ. Stat. art. 4590i, § 1.02(b)(1).

Furthermore, the Hospital's credentialing activities are an inseparable part of the medical services Rose received. One of a hospital's primary functions is to provide a place in which doctors dispense health care services. The quality of a health care provider's medical staff is intimately connected with patient care. A hospital's credentialing of doctors is necessary to that core function and is, therefore, an inseparable part of the health care rendered to patients. *See, e.g., Bell v. Sharp Cabrillo Hosp.,* 212 Cal.App.3d 1034, 260 Cal.Rptr. 886, 896 (1989) (finding that hospital's duty to credential physicians "is 'inextricably

---

malice in five respects: (1) allowing Dr. Fowler to perform and continue to perform surgery; (2) entrusting the operating room facilities and related equipment to Dr. Fowler; (3) recommending, granting, renewing, and continuing Dr. Fowler's staff privileges; (4) failing to deny or suspend Dr. Fowler's staff privileges; and (5) failing to perform a reasonable investigation into Dr. Fowler's background and qualifications.

6. Under the court of appeals' analysis, the MLIIA would theoretically apply only to those negligent credentialing claims in which a dis-

crete credentialing decision happened to occur while the complaining patient was hospitalized. Moreover, if there were multiple hospitalizations or periods of treatment about which the patient complained, only those during which a credentialing decision was made would be governed by the statute. We doubt that the Legislature intended such an arbitrary result. See Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 629 (Tex.1996) ("Courts should not read a statute to create ... an absurd result.").

interwoven' with delivering competent quality medical care to hospital patients"); *Winona Mem'l Hosp.; Ltd. P'ship v. Kuester*, 737 N.E.2d 824, 828 (Ind.Ct.App.2000) (holding that claim for negligent credentialing of physician is "directly related to the provision of health care and is, therefore, not excluded from [Indiana's medical malpractice act]").

When a plaintiff's credentialing complaint centers on the quality of the doctor's treatment, as it does here, the hospital's alleged acts or omissions in credentialing are inextricably intertwined with the patient's medical treatment and the hospital's provision of health care. Although neither the Hospital as an entity nor the credentialing board actually performed the surgeries on Rose, a doctor lacking credentials could not have performed surgery in that hospital. Likewise, Rose's negligent credentialing claim derives from Dr. Fowler's alleged negligent treatment. Indeed, without negligent treatment, a negligent credentialing claim could not exist. *See Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex.App.–Houston [14th Dist.] 2002, no pet.) ("If the physician is not negligent, there is no negligent credentialing claim against the hospital."). Thus, the Hospital's acts or omissions in credentialing Dr. Fowler are an inseparable part of the treatment provided to Rose.

Moreover, a negligent credentialing claim involves a specialized standard of care. *See Mills v. Angel*, 995 S.W.2d 262, 275 (Tex.App.–Texarkana 1999, no pet.) ("Expert testimony *is required* to establish liability in the area of credentialing, because the procedures ordinarily used by a hospital in evaluating applications for staff privileges are not within the realm of the ordinary experience of jurors.") (emphasis in original); *see also* Lisa M. Nijm, *Pitfalls of Peer Review, The Limited Protections of State and Federal Peer Review Law for Physicians*, 24 J. Legal Med. 541, 543 (2003) [hereinafter *Pitfalls of Peer Review*] (noting that peer review committees consist of physicians who "possess the specialized knowledge necessary to make accurate medical judgments"). The health care industry has developed various guidelines to govern a hospital's credentialing process. *See Pitfalls of Peer Review*, 24 J. Legal Med. at 544 (noting that the Joint Commission on Accreditation of Healthcare Organizations, state and federal legislation, and the American Medical Association have all created guidelines pertaining to physician credentialing). Thus, a negligent credentialing claim involves "accepted standards of ... health care." *See* Tex. Rev.Civ. Stat. art. 4590i, § 1.03(a)(4).

We hold that negligent credentialing claims involve a claimed departure from an accepted standard of health care and are therefore "health care liability claims" governed by the MLIIA.

## IV

### Expert Reports

■ Under the MLIIA, if a defendant files a motion challenging the adequacy of a claimant's expert report, the trial court must grant the motion if "it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report." Tex.Rev.Civ. Stat. art. 4590i, § 13.01(*l*).

Because the court of appeals decided that Rose's claims were not health care liability claims, it did not consider whether the expert reports constituted a good faith effort to comply with the statute. 87 S.W.3d at 193. Accordingly, we remand to that court to determine whether Rose's expert reports constituted a good faith effort to comply with the statute.

## V

### Conclusion

We hold that a claim for negligent credentialing is a claim against a health care provider for a departure from an accepted standard of health care, and as such it is a health care liability claim that carries all the statutory and common law burdens associated therewith. Accordingly, we reverse the court of appeals' judgment and remand the case to that court for further proceedings. *See* Tex.R.App. P. 60.2(d).