# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00092-CV

**Clark Watts, M.D., Appellant**

v.

**Roger Renee Rodriguez and Dorothy Rodriguez, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN404093, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Clark Watts, M.D., appeals from the trial court's denial of his motion to dismiss due to the failure of appellees Roger and Dorothy Rodriguez to file an expert report under section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2007). Because we conclude that appellees' claims against Watts are healthcare liability claims subject to chapter 74 of the civil practice and remedies code, we reverse the trial court's denial of Watts's motion and remand the cause for entry of an order of dismissal.

In July 2003, Roger Rodriguez underwent spinal surgery performed by Dr. Byron Neely; Watts acted as assistant surgeon. As a result of Neely's negligence, appellees allege, Mr. Rodriguez suffered a permanent spinal injury and a severe infection and has required further surgical assistance. In October 2004, appellees produced an expert report prepared by Dr. William Francis, who opined that Neely's care of Rodriguez departed from the accepted

standards of medical care. In December 2004, appellees sued Neely and St. David's Hospital, where the surgery took place, alleging medical malpractice. In March 2005, appellees produced a report by Dr. Neil Kochenour discussing Neely's malpractice related to Rodriguez and the hospital's negligence in continuing to allow Neely full medical privileges. In July 2005, appellees amended their petition adding Watts as a defendant and alleging that he was liable "for the reason that he was engaged in a joint enterprise with 'Neely' during the performance of the complained of negligent surgery."[1] Watts filed an objection to appellees' expert reports, arguing that because the expert reports did not allege that he had violated the standard of care, the reports did not establish a causal link between his conduct and Mr. Rodriguez's injuries. Watts asked the trial court to dismiss appellees' claims against him pursuant to section 74.351(b) of the civil practice and remedies code. Appellees responded that because they sued Watts under a joint-enterprise theory, not for medical malpractice, no expert report was required as to his conduct. Alternatively, they argued that if their claim against Watts was determined to be a healthcare liability claim, the report by Dr. Francis was sufficient. The trial court denied Watts's motion to dismiss for failure to file an expert report.

On appeal, Watts contends that appellees' claim against him is a healthcare liability claim no matter how appellees attempt to re-frame it as one of joint enterprise. Appellees insist that their claim against Watts is not a healthcare liability claim and that they have not alleged that Watts departed from the accepted standards of care. In the alternative, appellees contend that if their claim against Watts is a healthcare liability claim, Dr. Francis's report is sufficient under section 74.351.

---

[1] In December 2005, the parties agreed to sever appellees' claims against the hospital into another cause number. Appellees' claims against the hospital and Neely are not part of this appeal.

2

Plaintiffs may not avoid the requirements of chapter 74 by "recasting their causes of action as something other than health care claims." *Vanderwerff v. Beathard*, 239 S.W.3d 406, 408 (Tex. App.—Dallas 2007, no pet.); *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). The supreme court has explained that whether a claim is a healthcare liability claim governed by chapter 74 of the civil practice and remedies code is decided not by a plaintiff's "artful pleading" but instead by whether the act or omission complained of is "an inseparable part of the rendition" of healthcare services. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004); *see Rubio*, 185 S.W.3d at 847-48. Whether proof of the claim requires expert testimony by a healthcare professional may be "an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services." *Rubio*, 185 S.W.3d at 848. We consider the essence of the plaintiff's claim, the alleged wrongful conduct, and the alleged duties breached in making our determination. *Id*. at 851.

In this case, appellees claimed Rodriguez was injured during the surgery performed by Neely. Although appellees do not allege that Watts himself harmed Rodriguez directly, they allege Watts is liable because he was engaged in a joint enterprise with Neely during the allegedly negligent surgery. In other words, they contend that Watts is liable due to Neely's acts or omissions during the surgery and that Neely's liability in essence flows through the joint enterprise to Watts. Appellees seem to argue that Watts should have known, through the exercise of his professional judgment, that he should not have assisted or worked with Neely. Thus, Watts's alleged wrongdoing springs out of his judgment as a healthcare provider and his professional decision to assist Neely and is grounded in Neely's alleged medical negligence. Appellees could not prevail against Watts

3

without relying on expert opinions as to Neely's alleged negligence and as to what a prudent medical professional in Watts's position would have done when confronted with the same situation. In other words, expert testimony would be required to establish breaches of the standard of medical care both by Neely and by Watts. *See id.* at 848; *see also MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40-41 (Tex. 1998) (plaintiff's claim that medical clinic misrepresented quality of its services and personnel verbally and in marketing materials was essentially claiming that clinic "failed to provide quality medical care as promised . . . . To successfully prove this claim, Campbell must prove a breach of the applicable standard of care for health care providers."). The alleged wrongful conduct and the essence of appellees' claims against both doctors is Neely's alleged malpractice. *See Rubio*, 185 S.W.3d at 851. Therefore, we hold that appellees' claim against Watts is a healthcare liability claim that cannot be recast under a joint enterprise cause of action.[2] *See id.* We sustain Watts's first issue on appeal.

Because appellees' claim against Watts is a healthcare liability claim governed by chapter 74, we must now determine whether any of the expert reports filed by appellees was

---

[2] Appellees argue that they must be allowed to sue Watts for vicarious liability due to joint enterprise, putting forth as examples situations in which a hospital is sued for the misconduct of its employees or agents and stating that plaintiffs should not be required to produce expert reports identifying hospital conduct that falls below accepted standards of care. However, this is precisely what is required when suing a hospital for healthcare liability claims. A hospital can only act through its agents and employees, and when a plaintiff sues a hospital for malpractice, the plaintiff must serve a report showing that the hospital was negligent in its credentialing of doctors, *see Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 545-46 (Tex. 2004), that its "lapses in professional judgment and treatment" allowed the wrongful conduct to occur, *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005), that its hiring, supervision, or training fell below the standard of care, *see In re Kiberu*, 237 S.W.3d 445, 449 (Tex. App.—Fort Worth 2007, orig. proceeding), or that it was negligent in allowing its staff to pursue a particular course of action, *see Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 15 (Tex. App.—Texarkana 2002, pet. denied).

4

sufficient as to Watts. Appellees filed expert reports by Drs. Francis, Kochenour, and John Griffith. All of the reports explain how Neely's conduct fell below the applicable standard of care, and Griffith and Kochenour also opined that the hospital failed in its duty to monitor the doctors to whom it gave surgical privileges. Appellees contend that Francis's report is sufficient under section 74.351 because it fully explains the alleged negligence that caused Rodriguez's injuries despite never mentioning Watts by name; they do not attempt to rely on the reports prepared by Griffith[3] and Kochenour.[4] Appellees note that there is no requirement that the report mention Watts specifically and argue that because Francis's report states that Neely breached the standard of care, the trial court could have found that the report applied to Watts as a participant in the surgery. We disagree.

Francis's report sets out several alleged breaches of the duty of care by Neely, stating that Francis has "knowledge of the accepted standards of care that are applicable to Byron Neely, M.D." He states that Neely never should have performed the surgery because there was no evidence that Rodriguez had spinal cord symptoms that would call for the surgery and that Neely's decision to perform the surgery "deviated from [the applicable] standard of care." Instead, Francis opines, Rodriguez should have been treated through non-surgical options first. Because Neely performed

[3] Dr. Griffith's report, dated June 11, 2002, and related to an earlier allegation of malpractice, opines that Neely was under the influence of opiates and possibly alcohol when he performed surgery on a patient named Jetton. The report describes the signs of Neely's impaired judgment, including "sloppy record-keeping" and physical symptoms, and states that Neely's decision to operate on Mr. Jetton in an impaired state "contributed to the bad outcome" suffered by the patient. Griffith also opines that the hospital must have known about Neely's impairment and failed to suspend his surgical privileges. Griffith does not refer to Watts in his report.

[4] Dr. Kochenour's report, dated March 8, 2005, addresses the hospital's deviation from accepted standards of care in allowing Neely surgical privileges. Kochenour stated that the hospital learned of Neely's impairment through two earlier cases, including Mr. Jetton's suit, but continued to allow Neely full medical and surgical privileges. Kochenour does not mention Watts in his report.

a surgery that was not medically indicated, Rodriguez suffered the resulting infection and other complications. Francis concludes by saying, "All of those surgeries and complications were directly caused by Byron Neely, M.D. performing the unnecessary surgical procedures."

Francis's report only describes Neely's departures from the standard of care. He does not name Watts or refer to any conduct by Watts, nor does he provide an opinion about what Watts should have done differently. He does not explain how Watts should have decided whether to assist Neely, such as whether Watts should have reviewed Rodriguez's medical reports or performed an independent examination of Rodriguez. Francis does not state that Watts or anyone else involved in the surgery performed medical malpractice during the surgery, and appellees themselves state that they are not making such allegations. Francis's report does not set out the applicable standard of care that Watts should have followed, how Watts breached that standard, or how any breach by Watts cause Rodriguez's injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). Therefore, Francis's report is not sufficient as to Watts. We sustain Watts's second issue on appeal.

Having sustained Watts's issues on appeal, we reverse the trial court's denial of Watts's motion to dismiss. We remand the cause to the trial court for entry of an order of dismissal pursuant to section 74.351(b) of the civil practice and remedies code. *See id.* § 74.351(b).

_____

David Puryear,  Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed:   April 18, 2008