Opinion issued January 8, 2009













     




In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00484-CV




BELINDA K. SKLOSS, Appellant

V.

SANDRA J. PEREZ AND GUSTAVO PEREZ, SR., INDIVIDUALLY AND
AS NEXT FRIENDS OF G.P. AND A.P., MINORS, Appellees




On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 07CV0409




MEMORANDUM OPINION


          Appellant, Belinda K. Skloss, a Licensed Professional Counselor, appeals from
the trial court’s order denying her motion to dismiss the suit brought against her by
appellees, Sandra J. Perez and Gustavo Perez, Sr., Individually and as Next Friends
of G.P. and A.P., minors. In her sole issue, appellant contends that appellees’ suit
constitutes a health care liability claim and that they failed to serve appellant with an
expert report, as required by Texas Civil Practice and Remedies Code section
74.351.


 
          We reverse and remand for entry of judgment dismissing appellees’ claims with
prejudice and assessing attorney’s fees. 
Background
          Appellant is licensed by the State of Texas as a Licensed Professional
Counselor (“LPC”). See Tex. Occ. Code Ann. § 503.001–.511 (Vernon 2004 &
Supp. 2008). Appellees, Sandra J. Perez and Gustavo Perez, Sr., are the grandparents
and conservators of G.P. and A.P.
 
          Beginning in October 2003, appellant provided counseling services to G.P.,
who was then seven years of age. In March 2004, appellant began providing
counseling services to A.P., who was then four years of age. In May 2004, appellant
began counseling Mr. and Mrs. Perez. Appellant’s counseling services ended in April
2005. According to appellees, appellant saw Mr. and Mrs. Perez over 300 times and
saw the children 80 to 90 times each. 
          According to the record, appellees allege that, during the course of the period
from October 2003 to April 2005, appellant required an “exorbitant number of visits,”
sometimes requiring twice daily visits; threatened to discontinue seeing the children
if appellees refused; “threatened to withdraw her support of the family’s custody
battle” if appellees refused; required Mr. Perez to drive appellant around town for
errands and deliveries and then charged his health insurance carrier for therapy
sessions; would call four-year-old G.P. on the telephone and bill the insurance
company for therapy sessions; and that appellant “entered into dual relationships”
with appellees and improperly terminated their relationship. Appellees allege that
they have expended approximately $194,000 in “therapy expenses” over the course
of the total 18-month period.
 
          On April 5, 2007, appellees, individually and as next friends of the children,
sued appellant, alleging negligence, breach of fiduciary duty, “outrage,” “breach of
privacy rights,” fraud, and breach of contract. Generally, appellees


 alleged that
appellant negligently failed to treat, or improperly treated, appellees, who were
suffering from “psychological problems”; that appellees’ psychological problems
were beyond appellant’s competency to treat; that appellant “negligently undertook
to treat [appellees]” and “negligently failed to refer [appellees] to another more
competent professional person for proper treatment”; and that appellant “negligently
maintained or negligently failed to maintain appropriate professional boundaries.” 
In addition, appellees alleged that appellant breached her duty of trust; that her
conduct was extreme and outrageous, and caused appellees extreme emotional
distress; that she fraudulently represented that she was competent to treat appellees;
and that she failed to perform the contract for professional services and charged
substantially excessive fees. 
          It is undisputed that appellees did not serve appellant with an expert report. On
January 22, 2008, appellant moved to dismiss appellees’ suit on the basis that
appellees’ claim constituted a health care liability claim and that appellees had failed
to file an expert report within 120 days of filing their initial claim, as required by
Civil Practice and Remedies Code section 74.351. Appellees responded that their
claims did not constitute health care liability claims. On May 20, 2008, after a
hearing, the trial court denied appellant’s motion to dismiss. This appeal ensued. 
Health Care Liability Claim
          Appellant contends that the trial court erred by denying her motion to dismiss 
appellees’ claim for failure to timely file an expert report. Appellant contends that
she is a “health care provider” and that appellees’ claim constitutes a “health care
liability claim,” as defined under Chapter 74 of the Texas Civil Practice and
Remedies Code. Appellant contends that, because it is undisputed that appellees did
not serve an expert report on appellant, the suit must be dismissed. 
A.      Standard of Review
          We review a trial court’s decision on a motion to dismiss a case for failure to
comply with section 74.351 for an abuse of discretion. Am. Transitional Care Ctrs.
of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of
discretion standard in review of trial court’s decision to dismiss under predecessor
statute, section 13(e) of article 4590i); Torres v. Mem’l Hermann Hosp. Sys., 186
S.W.3d 43, 45 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A trial court abuses
its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules
or principles when it dismisses a claim. Torres, 186 S.W.3d at 45. However, if
resolution of the issue requires us to construe statutory language, we review under a
de novo standard. Id. 
B.      Applicable Law and Guiding Principles
          At the time appellant’s cause of action accrued, Civil Practice and Remedies
Code section 74.351 provided, in relevant part, as follows:
(a)     In a health care liability claim, a claimant shall, not later than
the 120th day after the date the claim was filed, serve on each
party or the party’s attorney one or more expert reports, with a
curriculum vitae of each expert listed in the report for each
physician or health care provider against whom a liability claim
is asserted. The date for serving the report may be extended by
written agreement of the affected parties. . . .



(b)     If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by
Subsection (a), the court, on the motion of the affected
physician or health care provider, shall, subject to Subsection
(c), enter an order that: (1) awards to the affected physician or
health care provider reasonable attorney’s fees and costs of
court incurred by the physician or health care provider; and (2)
dismisses the claim with respect to the physician or health care
provider, with prejudice to the refiling of the claim.


 

 
 
 
Stated generally, section 74.351(a) requires a claimant to serve an expert report on
a defendant health care provider, or its attorney, within 120 days after the date the
claim is filed. If the claimant fails to timely comply, the trial court is required, on the
motion of the affected health care provider, to dismiss the suit.  

          Statutes must be construed as written and the legislative intent determined,
when possible, from the express terms. Tex. Gov’t Code Ann. § 311.023 (Vernon
2005); Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237 S.W.3d 869, 873
(Tex. App.—Houston [1st Dist.] 2007, pet. denied). Words and phrases shall be read
in context and construed according to rules of grammar and common usage. Tex.
Gov’t Code Ann. § 311.011(a) (Vernon 2005). Words and phrases that have
acquired a technical or particular meaning, whether by legislative definition or
otherwise, shall be construed accordingly. Id. § 311.011(b). Unless a word is used
with reference to a particular trade or subject matter or is a word of art, the word shall
be given its ordinary meaning. Id. § 312.002.

B.      Appellants’ Claim

          Pursuant to Chapter 74, a “health care liability claim” is

a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim
or cause of action sounds in tort or contract.Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005).

          Here, applying Chapter 74, we determine whether appellants’ claim is a “health
care liability claim” by determining whether their cause of action (1) is against a
“health care provider” and (2) “for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care, or health care, or safety.” See id.

          1.       Health care provider

          The parties dispute whether appellant, as an LPC, is a “health care provider”
under Chapter 74. See id. § 74.001(a)(12). A “health care provider” is “any person,
partnership, professional association, corporation, facility, or institution duly licensed,
certified, registered, or chartered by the State of Texas to provide health care,
including: a registered nurse, a dentist, a podiatrist, a pharmacist, a chiropractor, an
optometrist, or a health care institution.” Id. § 74.001(a)(12) (emphasis added). 

          It is undisputed that appellant is a person licensed by the State of Texas as an
LPC. See Tex. Occ. Code Ann. ch. 503 (Vernon 2004 & Supp. 2008). The list of
health care providers in section 74.001(a)(12) does not specifically include an LPC;
however, the list is non-exhaustive.


 See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(12) (Vernon 2005); Tex. Gov’t Code Ann. § 311.005(13) (Vernon
2005) (“‘Includes’ and ‘including’ are terms of enlargement and not of limitation or
exclusive enumeration, and use of the terms does not create a presumption that
components not expressed are excluded.”); Christus Health v. Beal, 240 S.W.3d 282,
286 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting that provider list at
section 74.001(a)(12) is non-exhaustive). 

          Section 74.001 also requires that the person be duly licensed “to provide health
care.” See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12). “Health care” is “any
act or treatment performed or furnished, or which should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient during the
patient’s medical care, treatment, or confinement.” Id. § 74.001(a)(10) (emphasis
added). Appellees contend that appellant is not a health care provider because she did
not provide “medical care.”




          “Medical care” is defined as “practicing medicine.” Id. § 74.001(a)(19).
“Practicing medicine” is 

the diagnosis, treatment, or offer to treat a mental or physical disease or
disorder or a physical deformity or injury by any system or method, or
the attempt to effect cures of those conditions, by a person who: (A)
publicly professes to be a physician or surgeon; or (B) directly or
indirectly charges money or other compensation for those services.

 
Tex. Occ. Code Ann. § 151.002(a)(13) (Vernon Supp. 2008) (governing physicians). 
Occupations Code chapter 503, which governs LPCs, specifically states that “[t]his
Chapter does not authorize the practice of medicine as defined under the laws of this
State.” Tex. Occ. Code Ann. § 503.004 (Vernon 2004). Hence, here, appellant did
not provide “medical care” to appellees.

          It is undisputed that appellees were not in “confinement” at a health care
institution. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (Vernon 2005). 
The remaining question is whether appellant, as an LPC, was performing an act “for,
to, or on behalf of a patient during the patient’s . . . treatment.” Id. (emphasis added). 

          The term “treatment” is not defined in section 74.001. Section 74.001 provides
that, “[a]ny legal term or word of art used in this chapter, not otherwise defined in this
chapter, shall have such meaning as is consistent with the common law.” See id.
§ 74.001(b). Appellant does not direct us to any, and we do not find any, case law
that specifically defines “treatment” within Chapter 74 or considers whether an LPC
provides “treatment” in this context.


 

          As appellant points out, “treatment” is defined in common usage as “the act or
manner or an instance of treating someone or something” and as “the techniques or
actions customarily applied in a specific situation.” Merriam-Webster’s
Collegiate Dictionary 1333 (11th ed. 2003). More specifically, within the
medical context, “treatment” is defined as “the care and management of a patient to
combat, ameliorate, or prevent a disease, disorder, or injury.” Mosby’s Medical
Dictionary 1744 (6th ed. 2002). A “patient” is “a recipient of a health care
service.” Id. at 1294. Appellant contends that she was engaging in the “treatment”
of appellees because she was engaging in “the techniques and actions customarily
applied” by LPCs. Appellant directs us to Texas Occupations Code section
503.003(a), which defines the practice of professional counseling. Appellant
contends that, “[b]y definition, professional counseling includes treating mental
health.”

          Section 503.003(a) provides as follows, in pertinent part:

          (a)     In this chapter, “practice of professional counseling” means the
application of mental health, psychotherapeutic, and human
development principles to: 
                    (1)     facilitate human development and adjustment throughout
life;
                    (2)     prevent, assess, evaluate, and treat mental, emotional, or
behavioral disorders and associated distresses that interfere
with mental health; 
                    (3)     conduct assessments and evaluations to establish treatment
goals and objectives; and 
                    (4)     plan, implement, and evaluate treatment plans using
counseling treatment interventions that include:
                              (A)    counseling;
                              (B)    assessment;
                              (C)    consulting; and
                              (D)    referral.



Tex. Occ. Code Ann. § 503.003(a) (Vernon 2004) (emphasis added). 

          Contained in the record is appellant’s affidavit, in which she attested as
follows, in relevant part: “I am a licensed professional counselor, licensed by the
State of Texas to practice professional counseling. In that capacity, I assessed,
evaluated and treated the mental and emotional conditions of Sandra J. Perez,
Gustavo Perez, Sr., [G.P. and A.P.]”

          Hence, an LPC is licensed by the State of Texas to provide health care, that is,
“treatment,” and, here, appellant attested that she was providing “treatment” for the
mental and emotional conditions of appellees.

          By analogy, the Supreme Court of Texas has considered the scope of the
definition of a “health care provider” in section 74.001 in a case involving a physical
therapist. Rehabilitative Care Sys. of Am. v. Davis, 73 S.W.3d 233, 234 (Tex. 2002).
In Davis, Davis was attending physical therapy after having surgery on his shoulder. 
Rehabilitative Care Sys. of Am. v. Davis, 43 S.W.3d 649, 652 (Tex. App.—Texarkana
2001, pet. denied). During a session in which Davis was working on a weight
machine at the direction of his physical therapist, the therapist left the room. Id. at
653. While Davis was unsupervised, he tore his rotator cuff. Id. At trial, Davis
prevailed on his medical malpractice claim against the rehabilitation center. Id. at
652. On appeal, the rehabilitation center contended that the trial court erred in
denying its motion for an instructed verdict because Davis failed to produce expert
testimony. Id. at 656. The intermediate court held that Davis was not required to
produce expert testimony regarding the standard of care required of a physical
therapist when the claim was that of negligent supervision. Id. at 657. The court
concluded that the standard of care was within the comprehension of lay persons. Id.
The Supreme Court of Texas denied the petition for review; however, it wrote to
express its disapproval of the lower court’s conclusion that expert testimony was not
required to establish the appropriate standard of care. Davis, 73 S.W.3d at 234. The
high court concluded that a malpractice suit against a physical therapist is “no
different from any other medical-malpractice suit in that the applicable standard of
care must generally be established by expert testimony.” Id. 

          Nothing in section 74.001 draws a distinction between mental and physical
health care. Here, like Davis, the standard of care of a therapist in providing health
care to a patient, in the form of “treatment,” requires expert testimony.

          Moreover, other Texas statutes characterize an LPC as a “health services
provider.” For example, Texas Civil Practice and Remedies Code section 81.001,
defines a “mental health services provider” as “an individual, licensed or unlicensed,
who performs or purports to perform mental health services, including a: . . . licensed
professional counselor as defined by Section 503.002, Occupations Code.” Tex. Civ.
Prac. & Rem. Code Ann. § 81.001(2) (Vernon 2005) (defining in context of sexual
exploitation by mental health services provider).     

          We conclude that appellant is a health care provider within section 74.001 of
the Civil Practice and Remedies Code.

 
          2.       Healthcare Claim



          We next consider whether appellees’ claim is a health care liability claim. 
Again, a “health care liability claim” is

a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the
claimant’s claim or cause of action sounds in tort or contract.Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (Vernon 2005) (emphasis added).

          To determine whether a cause of action is a “health care liability claim,” we
consider the underlying nature of the claim. Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543–44 (Tex. 2004). If the act or omission alleged is an inseparable part
of the rendition of health care services, then the claim is a health care liability claim.
Id. at 544. One consideration is whether the specialized knowledge of an expert is
required to prove the claim. Id. A plaintiff cannot artfully plead around the
requirements of Chapter 74. See id. at 543. If the cause of action is based on a
breach of the standard of care by a healthcare provider, then the claim is a health care
liability claim, without regard to how it is labeled. Torres, 186 S.W.3d at 47.

          In their petition, as amended, appellees sued appellant for negligence, breach
of fiduciary duty, outrage, breach of privacy rights, fraud, and breach of contract. 
Specifically, as to their negligence claim, appellees alleged that appellant “negligently
. . . manipulated the emotions of [appellees] in order to gain control over [appellees]
and abused and mishandled the transference phenomenon that arose out of their
professional relationship”; that appellant “negligently and carelessly failed to treat,
or improperly treated[,] [appellees], individuals suffering from psychological
problems”; that appellant “negligently and carelessly entered into improper and
unprofessional dual relationships with [Mr. and Mrs. Perez] during the period of
therapy”; that “[d]uring the course of [appellees’] therapy, [appellant] negligently
conducted or handled the termination of the professional therapeutic relationship with
[appellees], ultimately terminated that relationship improperly, and/or failed to assist
in obtaining other professional treatment in accordance with accepted therapeutic
procedure or practice”; that appellant “negligently undertook to treat [appellees],
patients or clients who, under these circumstances, had psychological problems which
were beyond [appellant’s] competency to treat”; that appellant “negligently failed to
refer [appellees] to another more competent professional person for proper
treatment”; that appellant “negligently maintained or negligently failed to maintain
appropriate professional boundaries in the parties’ professional relationship.”
(Emphasis added.) 

          As to their remaining claims, stated generally, appellees alleged that appellant
breached her duty of trust; that her conduct was extreme and outrageous, and caused
appellees extreme emotional distress; that she fraudulently represented that she was
competent to treat appellees; and that she failed to perform the contract for
professional services and charged excessive fees.

          The underlying nature of these claims is that appellant “improperly treated,”
or “failed to treat,” appellees’ psychological disorders; that she was not competent “to
treat” appellees’; and that she failed to refer appellees to “other professional treatment
in accordance with accepted therapeutic procedure or practice.” Hence, appellees’
claims concern “treatment, lack of treatment, or other claimed departure from
accepted standards of . . . health care.” See Tex. Civ. Prac. & Rem. Code
§ 74.001(a)(13) (Vernon 2005).           

          In addition, at the heart of the services that an LPC provides is the assessment,
evaluation, and treatment of mental health disorders. See Tex. Occ. Code Ann.
§ 503.003(a) (Vernon 2004); see also Diversicare Gen. Partners, Inc. v. Rubio, 185
S.W.3d 842, 849–50 (Tex. 2005) (considering essence of services at issue). LPCs
make judgments about the care and treatment of an individual patient based on the
care that a patient requires. See Rubio, 185 S.W.3d at 850. The essence of appellees’
claims are that they were injured by appellant’s lapses in professional judgment. Id.
at 851. Hence, the treatment of appellees’ mental health was inseparable from the
health care and services provided to them by appellant. Id. at 849. 

          Further, an important factor in determining whether a claim is a health care
liability claim is whether expert testimony from a health care provider would be
necessary to establish the claim. Rubio, 185 S.W.3d at 848. Expert testimony is
necessary to establish the standard of care when the act of negligence alleged is of
such nature as to not be within the experience of laymen. See Rose, 156 S.W.3d at
544.

          Here, whether appellant acted within the standard of care of an LPC in treating
the specific mental health disorders presented by appellees is not within the
experience of laypersons; including, whether appellant “mishandled the transference
phenomenon that arose out of [her] professional relationship” with appellees. 
Similarly, whether the emotional injuries of which appellees complain in their suit
were proximately caused by appellant’s breach of the standard of care, if any, is not
within the experience of laypersons. Further, as to appellees’ breach of contract
claim,


 the scope and duration of care required to treat appellees’ respective
conditions and the reasonableness and necessity of the fees for that treatment is not
going to be within the experience of laypersons. 

 
          We conclude that appellees’ claims are health care liability claims because the
acts or omissions complained of amount to a claimed departure from accepted
standards of health care. See Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (Vernon
2005). As such, appellees’ suit is subject to the requirements of Chapter 74. 
Appellants filed suit on April 5, 2007. Pursuant to section 74.351, appellants were
required to file an expert report by August 3, 2007.


 Appellants do not dispute that
they did not file an expert report. When the claimant fails to timely comply, the trial
court is required, on the motion of the affected health care provider, to dismiss the
suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2008). We hold
that the trial court erred by denying appellant’s motion to dismiss appellees’ suit.

Conclusion

          We reverse the judgment of the trial court and remand for rendition of
judgment dismissing appellees’ claims with prejudice and assessing attorney’s fees. 

 




                                                             Laura Carter Higley

                                                             Justice



Panel consists of Chief Justice Radack and Justices Nuchia and Higley.