**Opinion filed December 13, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00256-CV

_____

### HENDRICK MEDICAL CENTER, Appellant

### V.

### TEXAS PODIATRIC MEDICAL ASSOCIATION; CORY BROWN, DPM; AND MARTIN V. SLOAN, DPM, Appellees

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 25137-B**

## O P I N I O N

Appellant, Hendrick Medical Center, brings this interlocutory appeal from the trial court's order denying its motion to dismiss the suit of appellees, Texas Podiatric Medical Association; Cory Brown, DPM; and Martin V. Sloan, DPM, for their failure to file an expert report under Section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). The issue on appeal is whether appellees' claims against Hendrick are health care liability claims under Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 74 (West 2011 &

Supp. 2012). Because we conclude that appellees' claims are not health care liability claims, we affirm the trial court's order.

*Background*

Dr. Brown and Dr. Sloan are podiatrists who are on Hendrick's medical staff. In February 2011, Hendrick gave Dr. Brown and Dr. Sloan written notice that, effective April 11, 2011, "[their] podiatry privileges [would] be administratively reduced by the elimination of all ankle privileges." Hendrick indicated in the notice that the decision to eliminate ankle privileges was based on its interpretation of the law that defines the scope of the practice of podiatry. Hendrick stated in the notice that "[i]t is important that you understand that this reduction in privileges is an administrative reduction and is not predicated on quality of care issues." Hendrick intended to eliminate all ankle privileges that had been extended to all podiatrists on its staff.

Appellees filed this suit against Hendrick. In their petition, appellees sought injunctive relief to prevent Hendrick "from denying to podiatrists hospital privileges for the treatment of ailments or injuries at or below the ankle." Appellees also sought declaratory relief regarding Hendrick's ability to deny or to revoke podiatrists' ankle privileges. Appellees requested that the trial court declare, among other things, that Hendrick's summary revocation of podiatrists' ankle privileges violated Hendrick's bylaws and that the denial or revocation of ankle privileges constituted an unlawful restriction on the scope of the practice of podiatry. Following a hearing, the trial court issued a temporary injunction that enjoined Hendrick "from denying, revoking or limiting any ankle privileges previously granted to Dr. Cory Brown and/or Dr. Martin V. Sloan."

Hendrick filed a motion to dismiss based on Section 74.351 of the Civil Practice and Remedies Code. In the motion, Hendrick asserted (1) that appellees claimed that it had withdrawn or denied hospital privileges to Dr. Brown and Dr. Sloan; (2) that actions taken by hospitals with respect to health care providers' privileges are administrative acts; (3) that Chapter 74 applies to such administrative acts; and (4) that, therefore, appellees were asserting health care liability claims subject to the expert-report requirements in Chapter 74. Because appellees had not served it with an expert report, Hendrick asserted that the trial court was required to dismiss this cause. After a hearing, the trial court denied Hendrick's motion.

2

*Issue on Appeal*

In its sole appellate issue, Hendrick contends that the trial court abused its discretion when it denied the motion to dismiss.

*Standard of Review*

We generally review a trial court's order granting or denying a motion to dismiss filed under Section 74.351 under an abuse of discretion standard. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 137 (Tex. App.—Eastland 2006, no pet.). However, when the issue, as in this case, involves the applicability of Chapter 74 to the plaintiffs' claims and requires an interpretation of the statute, we apply a de novo standard of review. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Strobel v. Marlow*, 341 S.W.3d 470, 473–74 (Tex. App.—Dallas 2011, no pet.); *Oak Park*, 206 S.W.3d at 137.

*Analysis*

The expert report requirements set forth in Section 74.351 apply to health care liability claims. A claimant who files a health care liability claim must serve an expert report on each party or the other party's counsel not later than the 120th day after the date the claimant's original petition was filed. Section 74.351(a). If the claimant fails to do so, the trial court must dismiss the health care liability claim on the defendant's motion. *Id.* § 74.351(b). A "health care liability claim" is defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety, *or professional or administrative services directly related to health care*, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (emphasis added). The legislature added the phrase "or professional or administrative services directly related to health care" when it modified the definition of "health care liability claim" in 2003. *See Tex. W. Oaks*, 371 S.W.3d at 184. The Texas Supreme Court has explained that, as used in Section 74.001(a)(13), the phrase "directly related to health care" modifies "professional or administrative services." *Id.*

"Professional or administrative services" is defined as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the

3

physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." Section 74.001(a)(24). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10).

A plaintiff cannot use artful pleadings to avoid the requirements of Chapter 74 when the essence of the suit is a health care liability claim. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). To determine whether a cause of action is a health care liability claim, we examine the underlying nature of the claim, and we are not bound by the form of the pleading. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005). A health care liability claim contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Tex. W. Oaks*, 371 S.W.3d at 179–80. If the act or omission complained of is an inseparable or integral part of the rendition of health care, the claim alleges a departure from accepted standards of health care and is, therefore, a health care liability claim. *Id.* at 180; *Rose*, 156 S.W.3d at 544.

Appellees' claims are based on Hendrick's decision to eliminate podiatrists' ankle privileges. Hendrick asserts that "[a]ppellees' petition sets out specific claims of departure from accepted standards of professional or administrative services directly related to health care." Hendrick states in its brief that "[t]here can be no 'administrative service' more directly related to the rendition of health care than the granting and denying of privileges to health care providers that provide the care." Appellees assert that, while Hendrick's decision to eliminate Dr. Brown's and Dr. Sloan's ankle privileges may fall within the definition of "administrative services," the decision was not "directly related to health care" or "an inseparable or integral part of the rendition of medical services." Appellees state in their brief that Hendrick's decision to eliminate ankle privileges "was not based on the actual rendition of health care, was not caused by the actual rendition of health care, and did not result in the actual rendition of health care."

To satisfy the definition of a health care liability claim, the "professional or administrative services" implicated by a cause of action against a health care provider must be

4

"directly related to health care." Section 74.001(a)(13); *Tex. W. Oaks*, 371 S.W.3d at 184. As stated above, Chapter 74 defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Section 74.001(a)(10). Thus, for claims relating to professional or administrative services to be health care liability claims, the services must directly relate to an act or treatment that was or should have been performed or furnished for, to, or on behalf of a patient. *Id.*; *Tex. W. Oaks*, 371 S.W.3d at 180–81.

Appellees' claims do not involve care or treatment that was rendered to any patient. Instead, their claims relate to a dispute between Hendrick and them as to the scope of the practice of podiatry. The act giving rise to appellees' claims—Hendrick's decision to eliminate ankle privileges—was not an inseparable or integral part of a patient's care or treatment. *Tex. W. Oaks*, 371 S.W.3d at 180. Therefore, Hendrick's act of eliminating privileges was not "directly related to health care." Because the complained-of act was not "directly related to health care," appellee's claims are not health care liability claims under Chapter 74.

Hendrick relies on *Rose*, which we have cited above, and *In re McAllen Medical Center, Inc.*, 275 S.W.3d 458, 462 (Tex. 2008), for the proposition that "claims related to the privileges extended to health care providers by health care facilities are health care liability claims." These cases are distinguishable from the present case. In *Rose*, a doctor performed cosmetic surgeries on a patient at a hospital. 156 S.W.3d at 542. Later, the patient sued the doctor, alleging that she had been injured as a result of the doctor's negligence in performing the surgeries. The patient also named the hospital as a defendant. The patient alleged that the hospital had been negligent in credentialing the doctor to practice at the hospital and in permitting him to continue to practice at the hospital after earlier complaints were made about him. *Id.* Specifically, the patient alleged that the hospital was negligent and malicious in allowing the doctor to perform her surgeries, in entrusting the operating room and equipment to the doctor, and in failing to suspend or review the doctor's privileges. *Id.* at 544–45. The patient's allegations revolved around the premise that the hospital had put her at risk by allowing the doctor to treat her. *Id.* at 545.

The *Rose* court explained, "When a plaintiff's credentialing complaint centers on the quality of the doctor's treatment, as it does here, the hospital's alleged acts or omissions in credentialing are inextricably intertwined with the patient's medical treatment and the hospital's

5

provision of health care." *Id.* at 546. In *Rose*, the patient's negligent credentialing claim derived from the physician's alleged negligent treatment of her. *Id.* The court stated that, "without negligent treatment, a negligent credentialing claim could not exist." *Id.* The court concluded that the hospital's acts or omissions in credentialing the physician were an inseparable part of the treatment that was provided to the patient. *Id.* The court held that the patient's negligent credentialing claims against the hospital were health care liability claims under Chapter 74 because they involved a claimed departure from an accepted standard of health care. *Id.*

Similarly, in *McAllen Medical Center*, former patients of a hospital alleged negligent credentialing claims against the hospital based on allegedly negligent treatment that they had received from a doctor at the hospital. 275 S.W.3d at 462. The patients claimed that the hospital had been negligent in hiring, retaining, and supervising the doctor. *Id.* Citing its earlier opinion in *Rose*, the court recognized that the patients were asserting health care liability claims. *Id.*

In *Rose* and *McAllen Medical Center*, the hospitals' granting of privileges allowed the doctors to provide treatment to the plaintiffs at the hospitals. The plaintiffs' claims against the hospitals centered on the quality of treatment that the doctors rendered to them at the hospitals. In this case, appellees' allegations do not involve the rendition of health care to any person. Quality of treatment is simply not at issue here. This case is distinguishable from *Rose* and *McAllen Medical Center*. Accordingly, those cases do not support the contention that appellees are asserting health care liability claims.

For the reasons stated above, we conclude that appellees' claims are not health care liability claims under Chapter 74. The trial court did not err when it denied Hendrick's motion to dismiss. Hendrick's appellate issue is overruled.

*This Court's Ruling*

We affirm the trial court's order denying Hendrick's motion to dismiss.


TERRY McCALL

JUSTICE

December 13, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

6