IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
11, 2008
 
 
            
Justice Johnson, joined by 
Justice Hecht, Justice Wainwright, 
and Justice Willett, 
dissenting.
 
            
The Court today allows a health care liability claim to go forward 
despite Marks’s failure to comply with the Medical Liability Insurance 
Improvement Act (MLIIA or Act). It does so by (1) condoning the recasting of a 
claim by a patient based on an injury caused by specialized hospital equipment 
into a non-health care claim by artful pleadings; and (2) misconstruing plain, 
unambiguous statutory language. I dissent.
            
Marks underwent surgery at St. Luke’s Hospital to implant a morphine pump 
into his spinal cord after multiple previous surgeries failed to alleviate his 
back problems. After surgery, the nursing staff made a notation in his medical 
records that he was at risk of falling because of his limited mobility, his need 
for an ambulatory assistance device, and the fact he was on morphine, and 
“Safety/Fall Precautions” were being implemented. The hospital’s Safety/Fall 
Precautions included provisions that there should be “no environmental hazards” 
in Marks’s room, his hospital bed was to be “in a low position with the brakes 
applied,” and the “side rails and safety devices” should be used as indicated. 
Marks alleges that seven days after his surgery and while still an inpatient, he 
and the footboard on his hospital bed fell when he placed his hand on the 
footboard and attempted to push himself from the bed to a standing position.
            
Marks sued St. Luke’s. He alleged the hospital was negligent in the 
following respects: (1) failing to properly train and supervise hospital 
employees in how to prevent falls and injuries; (2) failing to provide Marks 
with the assistance he required for daily living activities; (3) failing to 
provide him with a safe environment in which to receive treatment and recover; 
and (4) providing him with a hospital bed that had been negligently assembled 
and maintained by the hospital’s employees or nursing staff. The Court holds, 
and I agree, that the first three claims are health care liability claims that 
fall under the MLIIA. But, unlike the Court, I would hold that the entire suit 
is a health care liability claim subject to the procedures and limitations set 
out in the Act.
            
In order to preclude Marks’s suit from being subject to the MLIIA, the 
Court must, and does, reach three conclusions with which I disagree. The first 
is that one injury based on a single set of facts can, by the manner in which 
pleadings are formulated, be both a health care liability claim and a non-health 
care liability claim. The second is that a hospital bed furnished to a 
post-surgery hospital inpatient is not an inseparable part of health care provided by the hospital. The third is that accepted 
standards of hospital safety do not include providing safe hospital beds to 
patients confined in the hospital.
            
First, the Court’s holding allows a cause of action by a patient against 
a health care provider to be both a health care claim and a non-health care 
claim, even though the action arises from a single injury based on a single set 
of facts. The Court concludes that because of the manner in which Marks pleads 
his suit, three of his liability theories are health care liability claims while 
the other is a premises liability claim that is not subject to the MLIIA. In 
Diversicare, the concurring and dissenting 
justices similarly concluded that the victim of sexual assault at a nursing home 
asserted a premises liability claim against the nursing home independent of her 
health care liability claim. Diversicare Gen. Partner, 
Inc. v. Rubio, 185 S.W.3d 842, 857-58 (Tex. 2005) (Jefferson, C.J., 
concurring in part, and dissenting in part); id. at 861-66 (O’Neill, J., dissenting). The Court rejected that 
view because it “would open the door to splicing health care liability claims 
into a multitude of other causes of action with standards of care, damages, and 
procedures contrary to the Legislature’s explicit requirements. It is well 
settled that such artful pleading and recasting of claims is not permitted.” 
Id. at 854; see also Murphy v. Russell, 167 S.W.3d 835, 838 
(Tex. 2005) (“[A] claimant cannot escape the Legislature’s statutory scheme by 
artful pleading.”); Garland Cmty. Hosp. v. 
Rose, 156 S.W.3d 541, 543 (Tex. 2004) (“Plaintiffs cannot use artful 
pleading to avoid the MLIIA’s requirements when the 
essence of the suit is a health care liability claim.”). The Court today 
circumvents explicit language the Court used in Diversicare and other cases rejecting this type of 
claim-splitting by pleadings. The holding will inevitably open the door to 
manipulated, inventive, and artful pleading designed to avoid the MLIIA 
requirements and limitations by recasting of claims.
            
Allowing this type of claim-splitting almost assuredly will lead to more 
extended and expensive trial court proceedings to determine whether a patient’s 
pleadings assert health care liability claims subject to the MLIIA, non-health 
care liability claims, or both; and if both, which is which. As this appeal 
shows, there will be more extended and expensive appellate proceedings for the 
same purpose. Extended judicial proceedings and associated increased costs, 
including “economic” settlements to avoid litigation expense, are a significant 
part of what the Legislature intended to avoid through enactment of the MLIIA. 
See former Tex. Rev. Civ. Stat. 
art. 4590i, § 1.02(b)(2);1 see also id. § 1.02(b)(1).
            
The most appropriate course in circumstances such as these is the course 
the Court has taken before today: when the substance of a patient’s claim for 
injury comes within the statutory definition of a health care liability claim, 
then the MLIIA applies to all the plaintiff’s claims against the health care 
provider based on that injury. Here, no matter how Marks pleads his case, the 
substantive facts implicate questions about whether St. Luke’s met accepted 
standards of health care and safety. His injury arose during his hospital 
confinement and from his use of a hospital bed—a bed the nurses’ notes show was 
a specialty bed being used for patient care—that was allegedly improperly 
assembled and maintained by hospital employees. For this reason, I would hold 
that Marks’s injury and damages arise from a health care liability claim and 
that he cannot avoid application of the MLIIA by pleading otherwise.
            
Next, I would hold that the hospital bed furnished to Marks was an 
integral and inseparable part of the health care he received from St. Luke’s, so 
his allegations that the bed was negligently assembled and maintained fall 
within the provisions of the MLIIA. Thus, even if a plaintiff could recast a 
health care claim into another type of claim by artful pleadings, Marks has not 
done so.
            
In determining whether the MLIIA encompasses Marks’s claims, the 
statutory construction rules are well established. When interpreting statutes, 
courts should ascertain and give effect to the Legislature’s intent as expressed 
by the language of the statute. E.g., Entergy Gulf States, Inc. v. 
Summers, 282 S.W.3d 433, 437 (Tex. 2009); State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) (“[W]hen 
possible, we discern [legislative intent] from the plain meaning of the words 
chosen.”). The prime principle to follow when construing a statute is “the words 
[the Legislature] chooses should be the surest guide to legislative intent.” 
See Fitzgerald v. Advanced Spine Fixation Sys., 
Inc., 996 S.W.2d 864, 866 (Tex. 1999). Only when those words are ambiguous 
do we “resort to rules of construction or extrinsic aids.” In re Estate of Nash, 220 S.W.3d 914, 917 (Tex. 2007). 
We use definitions prescribed by the Legislature and any technical or particular 
meaning the words have acquired, but otherwise we construe the statute’s words 
according to their plain and common meaning unless a contrary intention is 
apparent from the context or unless such a construction leads to nonsensical or 
absurd results. FKM P’ship, Ltd. v. Bd. of Regents 
of Univ. of Houston Sys., 255 S.W.3d 619, 633 (Tex. 2008); see also 
Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 
278, 284 (Tex. 1999).
            
St. Luke’s asserts Marks’s suit implicates accepted standards of both 
health care and safety as referenced by the MLIIA. The Court, however, focuses 
on St. Luke’s safety argument and summarily concludes Marks’s hospital bed claim 
does not assert a departure from the accepted standards of health care. ___ S.W.3d at ___. I disagree.
            
The MLIIA defines a health care liability claim as follows:
 
a cause of 
action against a health care provider or physician for treatment, lack of 
treatment, or other claimed departure from accepted standards of medical care or 
health care or safety which proximately results in injury to or death of the 
patient, whether the patient’s claims or cause of action sounds in tort or 
contract.
 
Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(4).2 Under the statute, a cause of action is a 
health care liability claim if it (1) is against a health care provider or 
physician; (2) for treatment, lack of treatment, or other claimed departure from 
accepted standards of medical care or health care or safety; and (3) the alleged 
departure from accepted standards proximately results in injury to or death of 
the patient. The Act broadly defines “health care” as
 
any act or treatment performed or furnished, or which should 
have been performed or furnished, by any health care provider for, to, or on 
behalf of a patient during the patient’s medical care, treatment, or 
confinement.
 
Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(2); see Diversicare, 185 
S.W.3d at 847 (describing health care as “broadly defined” under the MLIIA).
            
As relevant here, health care includes any act that was or should 
have been performed by a health care provider for, to, or on behalf of a patient 
during the patient’s medical care, treatment, or confinement. Applying this 
broad definition, we have previously concluded that a cause of action alleges a 
departure from accepted standards of health care if the act or omission 
complained of is an inseparable part of the rendition of health care services. 
Diversicare, 185 S.W.3d at 848; see Walden 
v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995).
            
In this case, no one suggests Marks’s hospital confinement while 
recovering from the latest of several back surgeries was not medically 
necessary. It logically follows that if his condition made hospitalization 
medically necessary, then the hospital had to provide him with a reasonably safe 
hospital bed. Indeed, the expert reports Marks eventually filed explicated that 
as an accepted standard of care. See Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(2). And, if a reasonably safe hospital bed was necessary 
for Marks’s care and recuperation, it follows that the bed was an integral and 
inseparable part of his care and treatment, especially in this case in which it 
was an integral part of the hospital’s Safety/Fall Precautions protocol. See 
Diversicare, 185 S.W.3d at 
849-54.
            
Nevertheless, the Court focuses on the assembling of the bed as opposed 
to its use in patient care and determines that Marks’s claim for negligent 
assembly and maintenance of the bed is not a health care liability claim because 
it is based on the breach of an ordinary standard of care and not on a discrete 
standard of care applicable to the health care industry. Under this holding, St. 
Luke’s owed Marks the general duty of care owed by businesses to their 
invitees.3 But although health care providers and 
patients may well be premises owners or occupiers and invitees, the Legislature 
has imposed requirements on how suits by patients against health care providers 
may be brought. Those requirements differ from general requirements for suits by 
invitees against premises owners or occupiers. See Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(3); Diversicare, 185 
S.W.3d at 850 (“The obligation of a health care facility to its patients is not 
the same as the general duty a premises owner owes to invitees.”). If Marks had 
been a guest in a hotel when his bed fell, his fall could well have given rise 
to a premises liability claim. But he was not a hotel guest; he was a patient 
receiving health care in a hospital. There is a difference because of the MLIIA. 
Diversicare, 185 S.W.3d at 850 (“There is an 
important distinction in the relationship between premises owners and invitees 
on one hand and health care facilities and their patients on the other. The 
latter involves health care.”). Further, the bed furnished to Marks was much 
more than a hotel bed. As indicated by the nurses’ notes, the bed was intended 
to be and was being used as a specialized patient care bed. The nurses’ notes 
referenced Safety/Fall Precautions that included keeping the bed in a low 
position with the brakes applied and using the bed’s side rails and safety 
devices as indicated.
            
While Marks was a patient, the hospital provided him with a hospital bed 
as part and parcel—an integral and inseparable part—of actions “furnished, or 
which should have been performed or furnished, by [St. Luke’s] for, to, or on 
behalf of [Marks] during [Marks’s] medical care, treatment, or confinement.” 
See Tex. Rev. 
Civ. Stat. art. 4590i, § 
1.03(a)(2). And even if it were debatable whether a 
safe, specialized hospital bed was integral to and inseparable from health care 
St. Luke’s provided to Marks, the Court need look no further than Marks’s own 
expert reports for the answer. Marks eventually served expert reports from Dr. 
Jeffrey D. Reuben, an orthopedic surgeon, and Jan Zdanuk, a nurse practitioner. Although the reports were 
served too late to save his health care claims from dismissal, they demonstrate 
what Marks contends is the proper standard of care.4 Dr. Reuben opined:
 
The 
accepted standard of care for nursing and hospital practice is to provide the 
patient with reasonably safe medical equipment, including a hospital bed for 
in-patients, to receive and recover from medical treatment. The accepted 
standard of good care for nursing and hospital practice is to evaluate each 
patient to determine if he/she is a risk to fall. . . . If a . . . patient may 
be a risk to fall, the accepted standard of good care for nursing and hospital 
practice is to implement interventions to eliminate and reduce the patient’s 
risk of falling. . . .
 
. . . [St. 
Luke’s] knows that patients would use the footboard on a hospital bed as support 
to get out of bed. It is for this reason that the hospital footboard should be 
firmly secured to the hospital bed. [St. Luke’s] staff violated the accepted 
standard of care by failing to provide [Marks] with a [footboard] that was 
properly secured to the hospital bed. . . . Given [St. Luke’s] staff’s 
knowledge that [Marks] was a risk to fall, that he was on morphine, and that its 
patients use the footboard as support to get out of the hospital bed, [St. 
Luke’s] nursing staff should have provided [Marks] with a footboard that was 
properly secured to the hospital bed, and as part of its ongoing duty to assess 
and identify potential fall hazards, should have identified and properly secured 
the footboard to the hospital bed.
 
(emphasis added).
Nurse Zdanuk’s opinion was similar:
 
Hospitals 
have a duty to provide a safe environment of care for all patients. This 
includes equipment such as hospital beds that must be maintained in safe 
operating condition at all times. It is a breach in the standard of care for 
a footboard to fall off a bed when a patient leans on it while attempting to get 
up resulting in a fall with serious injuries.
 
(emphasis added).
            
This is not, as Marks asserts, a claim merely for “broken furniture;” it 
is a claim by a patient based on a bed that was more than a mere piece of 
furniture. A waiting room chair is a mere piece of furniture. Even a chair in 
Marks’s hospital room for his guests to sit on, or a cot for them to rest on, 
might be classified as a mere piece of furniture. A specialized hospital bed 
that proof shows (1) has wheels and brakes so it can be used to transport 
patients as well as to allow patients to rest and recuperate, (2) is built so it 
can be raised and lowered to accommodate patients’ needs, and (3) has side rails 
and other safety devices, cannot be so classified. The Legislature has 
prescribed and the expert reports filed in this case recognize that disputes 
such as the one before us involve standards of care owed by hospitals to 
patients.
            
The Court, however, says that Marks’s hospital bed allegations can be 
distinguished from a health care liability claim because the maintenance staff 
“responsible for assembling Marks’s bed . . . would not have been considered 
health care providers when doing so.” ___ S.W.3d at 
___. The Court misses the mark in two ways. First, Marks’s Original 
Petition states that the hospital bed was negligently assembled by St. Luke’s 
“employees, agents, servants or nursing staff.” Nurses are specially-trained 
health care providers that exercise professional judgment. But second, and more 
importantly, the MLIIA does not limit “health care” to those actions taken by 
nurses or doctors. Rather, the legislative definition of health care includes 
“any act” which was or should have been performed or furnished “by any health 
care provider for, to, or on behalf of a patient during the patient’s medical 
care, treatment, or confinement.” Tex. 
Rev. Civ. Stat. 
art. 4590i, § 1.03(a)(2). And, 
importantly, the Act defines “health care provider” as
 
any person, partnership, professional association, 
corporation, facility, or institution duly licensed or chartered by the State of 
Texas to provide health care as a registered nurse, hospital, dentist, 
podiatrist, pharmacist, or nursing home, or an officer, employee, or agent 
thereof acting in the course and scope of his employment.
 
Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(3)(emphasis added).
            
The definition plainly includes, without qualification, employees of 
health care providers so long as they are acting in the course and scope of 
their employment. The definition’s course and scope language does not purport to 
address the liability of health care employers such as hospitals for the 
actions of their officers, employees, and agents, and it is not necessary to do 
so; employers are liable under general principles of agency law for the actions 
of their officers, agents, and employees acting in the course and scope of their 
employment. So, unless the phrase “course and scope of his employment” is 
construed to be what it must be—a description of which officers, employees, and 
agents are health care providers—the phrase is surplusage. But we presume the Legislature intended an 
entire statute to be effective, so we “try to give effect to all the words of a 
statute, treating none of its language as surplusage 
when reasonably possible.” Phillips v. Bramlett, ___ S.W.3d ___, ___ (Tex. 2009); see 
Tex. Gov’t Code § 311.021(2). Properly 
construing the “course and scope of employment” language to define the types of 
employees who are health care providers avoids the type of strained analysis the 
Court undertakes today by dissecting and inquiring into nuances of language used 
to plead a cause of action; distinguishing between categories of health care 
provider employees based on duties, types of actions performed, and the type of 
judgment exercised; and speculating as to insurance coverages when there are no policies in the record. The 
Court distinguishes acts or omissions of hospital workers with specialized 
health care training from hospital workers that do not have specialized health 
care training but are nevertheless necessary for a hospital to properly care for 
patients. The statute does not do so; it does the very opposite. The Court’s 
interpretation contradicts the literal and plain statutory language despite the 
fact that the context of the language does not call for the Court’s 
interpretation. Moreover, giving the language its literal meaning does not yield 
absurd or nonsensical results. The Court’s “interpretation” violates 
long-established tenets of statutory construction. See, e.g., In re 
Jorden, 249 S.W.3d 416, 423 n.32 (Tex. 2008) 
(“There are instances where the literal meaning of a statute may be disregarded. 
But it is only where it is perfectly plain that the literal sense works an 
absurdity or manifest injustice.”) (quoting Gilmore 
v. Waples, 188 S.W. 1037, 1039 (Tex. 1916)).
            
The Court additionally states that Marks’s claim for negligent assembly 
and maintenance of the bed is not a health care liability claim because expert 
medical testimony would not be necessary to prove the claim.5 Yet, this Court has previously stated 
that such a circumstance does not preclude a claim from being subject to the 
MLIIA:
 
The fact 
that in the final analysis, expert testimony may not be necessary to support a 
verdict does not mean the claim is not a health care liability claim. A claim 
may be a health care liability claim to which the damage caps and expert report 
requirements are applicable and yet not require expert testimony to prevail at 
trial.
 
Murphy, 
167 S.W.3d at 838; see also Haddock v. Arnspiger, 793 S.W.2d 948, 951 (Tex. 1990) (noting that 
expert testimony is not needed to establish breach of a medical duty where the 
departure is plainly within the common knowledge of laymen). The 
legislatively-mandated expert report requirement merely establishes a procedural 
threshold over which a claimant must pass to continue the lawsuit. 
Murphy, 167 S.W.3d at 838.
            
A patient’s medically necessary, specialized hospital bed is different 
from other property or parts of a premises not designed 
and intended primarily for use by and in the care of patients, such as a rickety 
staircase, a defective waiting room chair, or an unlocked window. The hospital’s 
actions in providing Marks with a hospital bed are inseparable from the other 
medical and health care services it provided to Marks; a staircase, waiting room 
chair, an open window are not necessarily so. See Diversicare, 185 S.W.3d at 
855.
            
I would hold that Marks’s claim that the hospital provided a negligently 
assembled and maintained hospital bed alleges a breach of accepted standards of 
health care. For this second reason, I would hold that Marks’s suit is a health 
care liability claim subject to the MLIIA.
            
Finally, I would hold that accepted standards of hospital safety include 
providing reasonably safe hospital beds to patients, and Marks’s claim is for a 
violation of that standard. For this third reason, I would hold that his claim 
comes under the MLIIA.
            
The MLIIA defines a health care liability claim to include “a cause of 
action against a health care provider or physician for . . . [a] claimed 
departure from accepted standards of . . . safety which proximately results in 
injury to or death of the patient.” Tex. 
Rev. Civ. Stat. 
art. 4590i, § 1.03(a)(4). 
Thus, a safety-related cause of action is a health care liability claim if it 
(1) is against a health care provider or physician; (2) is for a departure from 
accepted standards of safety; and (3) the alleged departure proximately results 
in injury to or death of the patient. Id.
            
Although the foregoing are the only elements required by the text of the 
statute, the Court adds a fourth element: a cause of action alleges a departure 
from accepted safety standards when the unsafe condition is an inseparable or 
integral part of the patient’s care or treatment. The Court effectively adds 
language to the statute to justify its conclusion as to safety. Even so, there 
is no question the bed was an inseparable and integral part of Marks’s care and 
treatment and meets even the narrowed safety standard erroneously adopted by the 
Court. Although analysis of the statute’s language yields that conclusion, the 
nurses’ notes in Marks’s hospital chart referencing the implementation of 
Safety/Fall Precautions, which incorporated the hospital bed as part of the 
precautions, do not just yield the conclusion, they compel it.
            
Although the MLIIA does not define “safety,” the statute specifies that 
legal terms or words of art used but not otherwise defined in the statute “shall 
have such meaning as is consistent with the common law.” Tex. Rev. Civ. Stat. art. 4590i, 
§ 1.03(b). Thus, in interpreting the MLIIA, the Court has previously 
construed “safety” according to its common law definition as the condition of 
being “untouched by danger; not exposed to danger; secure from danger, harm or 
loss.” Diversicare, 185 S.W.3d at 855 (quoting 
Black’s Law Dictionary 1336 (6th 
ed. 1990)).
            
Our prior construction is consistent with the plain language of the 
statute, does not offend the purpose of the statute, is not inconsistent with 
its contextual meaning, and does not yield an absurd or nonsensical result. 
Because the Court does not determine otherwise, that should settle the question. 
Unfortunately, it does not. Instead, the Court justifies effectively adding 
language to the statute by concluding that a “broad” interpretation is at odds 
with the legislative purpose. ___ S.W.3d at ___ (citing 
Tex. Rev. Civ. Stat. art. 4590i, § 1.02(b)(1),(3)). The Court reasons that because a broad 
interpretation is not warranted, the statute’s safety standard is implicated 
only when the unsafe condition or thing “is an inseparable or integral part of 
the patient’s care or treatment.” Id. at ___. 
This is in direct contravention of the MLIIA’s 
explicit mandate that terms not defined by the statute be given their common law 
meaning, see Tex. Rev. Civ. Stat. 
art. 4590i, § 1.03(b), and our previous 
interpretation of the MLIIA. See Diversicare, 185 S.W.3d at 847 (describing health care 
as “broadly defined” under the MLIIA). The statute quite clearly does not 
say what the Court interprets it to say, and I agree with Chief Justice 
Jefferson’s choice of words in Diversicare:
 
Because 
the statute does not define “safety,” we must assign its common meaning . . . [of] protection from 
danger. . . . The specific source of that danger, be it 
a structural defect, criminal assault, or careless act, is without limitation. 
While it may be logical to read into the statute a requirement that a safety 
related claim also involve health care, there is nothing 
implicit in safety’s plain meaning nor explicit in the MLIIA’s language that allows us to impose such a 
restriction.
 
See id. 
at 860-61 (Jefferson, C.J., concurring in part, and 
dissenting in part) (citations omitted).
            
Further, en route to its unfortunate conclusion, the Court speculates 
about coverages of medical malpractice insurance 
policies and commercial general liability insurance policies that are not before 
us. It concludes the Legislature intended to exclude claims against health care 
providers that are covered by general liability insurance policies from the 
MLIIA. ___ S.W.3d at ___. Aside from the constitutional 
problem posed if the Legislature effectively delegated authority to insurance 
companies to determine operative statutory language by their contracts, see 
Proctor v. Andrews, 972 S.W.2d 729, 735 (Tex. 1998), and although the 
Legislature intended to relieve the malpractice insurance crisis by enacting the 
MLIIA, I simply do not agree that the MLIIA reflects intent by the Legislature 
to abdicate its legislative function by allowing claims against health care 
providers to be excluded from the Act’s provisions based on coverages provided by particular types of insurance 
policies.
            
What the MLIIA does reflect is legislative intent to broadly, not 
narrowly, include within the statute’s coverage claims made by patients against 
their health care providers. If policy considerations support excluding 
subcategories of claims from the MLIIA when the unambiguous statutory language 
includes the overall category, as it does here, then incorporating those 
exclusions into the statute is a Legislative prerogative, not a judicial one. 
See Tex. Const. art. 
II, § 1; Lee v. City of Houston, 807 S.W.2d 290, 294-95 
(Tex. 1991) (“A court may not judicially amend a statute and add words that are 
not implicitly contained in the language of the statute.”); Smith v. 
Davis, 426 S.W.2d 827, 831 (Tex. 1968). It is our duty as judges to 
ascertain the Legislature’s intent from the specific language it used, if 
possible, and to refrain from looking for extraneous reasons to read into laws 
unexpressed intentions. Gov’t Pers. Mut. Life 
Ins. Co. v. Wear, 251 S.W.2d 525, 529 (Tex. 
1952).
            
Additionally, by conflating standards of safety with standards of health 
care, the Court negates the Legislature’s intent to include within the MLIIA’s coverage a separate category of claims based on 
safety. If a health care provider furnishes unsafe materials or creates an 
unsafe condition as an integral and inseparable part of a patient’s health care 
or treatment, the health care provider’s acts or omissions would already fall 
within the category of claims based on departures from accepted standards of 
medical care or health care and there would be no need for the Act to include 
the word “safety.” See Diversicare, 185 S.W.3d 
at 848 (“A cause of action alleges a departure from accepted standards of 
medical care or health care if the act or omission complained of is an 
inseparable part of the rendition of medical services.”). Applying the Court’s 
“inseparable or integral part of the patient’s care or treatment” standard to 
“safety” effectively reads safety out of the statute instead of properly giving 
it meaning as adding a category of claims. Id. at 855 (“Certainly, the 
Legislature’s inclusion within the scope of the MLIIA of claims based on 
breaches of accepted standards of ‘safety’ expands the scope of the statute 
beyond what it would be if it only covered medical and health care.”). As noted 
previously, this Court has consistently construed statutes based on the 
presumption that the Legislature intended an entire statute to be effective, so 
we “try to give effect to all the words of a statute, treating none of its 
language as surplusage when reasonably possible.” 
Phillips, ___ S.W.3d at ___; e.g., Tex. Gov’t Code § 311.021(2); Sultan v. 
Mathew, 178 S.W.3d 747, 751 (Tex. 2005) (“We must avoid, when possible, 
treating statutory language as surplusage.”); City 
of LaPorte v. Barfield, 898 S.W.2d 288, 292 (Tex. 
1995) (“We will not read statutory language to be pointless if it is reasonably 
susceptible of another construction.”); Perkins v. State, 367 S.W.2d 140, 
146 (Tex. 1963) (“[E]ach sentence, clause and word is to be given effect if 
reasonable and possible.”). Accordingly, the Court should construe the 
Legislature’s inclusion of “safety” claims in the MLIIA as expanding the scope 
of health care liability claims beyond what it would be if the statute only 
covered medical and health care claims. Diversicare, 185 S.W.3d at 855 (“Certainly, the 
Legislature’s inclusion within the scope of the MLIIA of claims based on 
breaches of accepted standards of ‘safety’ expands the scope of the statute 
beyond what it would be if it only covered medical and health care.”). Instead, 
the Court cites case law from other jurisdictions to support the proposition 
that claims arising from negligent assembly or maintenance of hospital equipment 
generally sound in ordinary negligence and are not health care liability claims. 
___ S.W.3d at ___ & n.3. But the MLIIA is different 
from most, if not all, statutes in other states that regulate medical 
malpractice claims: it specifies that it extends to claims involving breaches of 
accepted standards of safety. See Diversicare, 185 S.W.3d at 860 n.3 (Jefferson, C.J., 
concurring in part, and dissenting in part) (“Though many states have statutes 
regulating medical malpractice claims, the MLIIA is unique in that it apparently 
is the only statute of its kind that by definition extends to claims involving 
safety.”). Examination of the statutes underlying the cases cited by the Court 
reveal their differences from the MLIIA. See La. Rev. Stat. Ann. § 40:1299.41 
(providing statutory protections for “malpractice” claims based on “health care 
or professional services rendered”); Ind. Code 34-18-2-18 (providing 
statutory protections for “malpractice” claims based on “health care or 
professional services” provided). Because the MLIIA extends to claims for 
injuries to patients based on breaches of accepted standards of safety, many 
claims by patients that might be considered claims for ordinary negligence or 
premises liability in other states are health care liability claims in Texas. 
Marks’s claim is one of them.
            
In sum, I would affirm the trial court’s dismissal of Marks’s claims for 
failure to file an expert report in accordance with requirements of the MLIIA. I 
would hold that Marks’s suit falls within the MLIIA for three separate reasons: 
(1) the entire claim is based on alleged violations of accepted standards of 
health care and safety and cannot be recast by artful pleading into both health 
care and non-health care claims; (2) the claim for negligently assembling, 
providing, and maintaining a hospital bed is a health care liability claim 
because it alleges a breach of accepted standards of health care; and (3) the 
claim for negligently assembling, providing, and maintaining a hospital bed is a 
health care liability claim because it alleges a breach of accepted standards of 
safety.
 
 
            
            
            
            
            
            
________________________________________
            
            
            
            
            
            
Phil Johnson
            
            
            
            
            
            
Justice
 
OPINION DELIVERED: August 
28, 2009






[1] 
Medical Liability and Insurance Improvement Act of 
Texas, 65th Leg., R.S., ch. 817, § 1.02, 1977 Tex. 
Gen. Laws 2039, 2040, repealed by Act of June 2, 2003, 78th Leg., R.S., 
ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. While 
this case was pending, the Legislature repealed the MLIIA, amended parts of the 
previous article 4590i, and recodified it in 2003 as 
chapter 74 of the Texas Civil Practice and Remedies Code. Because article 4590i 
continues to govern this case, citations are to the former article rather than 
the Civil Practice and Remedies Code.

[2] 
Medical Liability and Insurance Improvement Act of 
Texas, 65th Leg., R.S., ch. 817, § 1.03, 1977 Tex. 
Gen. Laws 2039, 2041, repealed by Act of June 2, 2003, 78th Leg., R.S., 
ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 
884.

[3] 
As the Court did in Diversicare, I “note the irony” of this position. 
Diversicare, 185 S.W.3d at 
853. In his brief, Marks asserts that the MLIIA should not apply to his 
claim because it is a premises liability claim based on ordinary negligence. But 
“[i]f we were to agree with [him], our decision would 
have the effect of lowering the standard from professional to ordinary care for 
[patients] in health care facilities under similar circumstances.” Id. at 853-54.

[4] 
Marks asserts the Court should not consider the 
expert reports because the “experts were retained to opine as to the standards 
involved in the health care liability claims that were added in [Marks’s] Second 
Amended Petition. They do not address the ordinary standards of care involved in 
Marks’s other claims.” But as the Court acknowledges, “there 
is no significant difference” between Marks’s original and amended 
petitions. ___ S.W.3d at ___. Both petitions 
included claims based on the hospital bed, and both experts concluded St. Luke’s 
violated the accepted standard of care for health care providers by providing 
Marks with an improperly assembled hospital bed.

[5] 
Marks, however, was not so sure. In the trial 
court he designated Dr. Reuben as an expert witness who “is expected to testify 
that St. Luke’s violated the accepted standard of care of good nursing and 
hospital practice on March 25, 2000, by failing to provide the plaintiff with a 
reasonably safe hospital bed in which to receive and recover from medical 
treatment . . . [or] by providing the plaintiff with a hospital bed with a 
footboard that was not properly secured or attached to the hospital 
bed.”