Affirmed and Opinion filed May 26, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00381-CV

___________________

 

YOUNAN NOWZARADAN, M.D.,
Appellant

 

V.

 

SHIRLEY H. RYANS, Appellee



 



 

On
Appeal from the 157th District Court

Harris County,
Texas



Trial Court Cause No. 2008-42087

 



 

 

OPINION

            In this interlocutory appeal, Younan
Nowzaradan, M.D. contends the trial court erred by denying his motion to
dismiss Shirley H. Ryans’s gross-negligence claim because of her failure to serve
a sufficient expert report as prescribed under Chapter 74 of the Civil Practice
and Remedies Code—the Texas Medical Liability Act.  Tex. Civ. Prac. & Rem.
Code Ann. §§ 74.001–.507 (West 2011).  We affirm.

I.  
Background

            In October 2006, James Key, M.D. performed hip-replacement
surgery on Ryans.  Although Dr. Nowzaradan was present during the surgery, the
parties dispute his level of participation.  Following surgery, Dr. Nowzaradan allegedly
supervised Ryans’s rehabilitation.  In July 2008, Ryans filed a medical-malpractice
claim against Dr. Nowzaradan and others, claiming that their ordinary
negligence in failing to respond properly to her prosthetic-hip dislocation
caused her injuries.  Contemporaneously, Ryans served Dr. Nowzaradan with an
expert report.  In September 2008, Ryans served a supplemental report in which her
expert further discussed the applicable standard of care.  There is no dispute
in this appeal that these reports complied with the expert-report requirements
of chapter 74.  

On August 4, 2009, Ryans filed her third-amended
petition in which she added a gross-negligence claim.[1]  Dr. Nowzaradan
filed a motion to dismiss Ryans’s gross-negligence claim, arguing it was a
separate cause of action which her expert report did not address.  The trial
court denied the motion, and Dr. Nowzaradan filed this interlocutory appeal.  See
id. § 51.014(a)(9) (West 2008) (authorizing interlocutory appeal of denial
of motion to dismiss for failure to serve expert report under chapter 74).      

II.   Allegation of Gross
Negligence in Health Care Liability Suit

            In his sole
issue, Dr. Nowzaradan contends the trial court erred by denying his motion to
dismiss because Ryans was required to serve timely a section 74.351 expert
report supporting her gross-negligence claim.

A.   Relevant Law and
Standard of Review

 “In a health care liability claim, a claimant shall, not later than the
120th day after the date the original petition was filed, serve on each party
or the party’s attorney one or more expert reports, with a curriculum vitae of
each expert listed in the report for each physician or health care provider
against whom a liability claim is asserted.”  See id. § 74.351(a).  A section
74.351 expert report must include a fair summary of the expert’s opinions as of
the date of the report regarding (1) the applicable standards of care, (2) the
manner in which the physician’s care failed to satisfy that standard, and (3)
the causal relationship between the physician’s failure and the injury, harm,
or damages claimed.  See id. §
74.351(r)(6).  Generally, if the plaintiff fails to serve an expert report
within the statutory deadline, the trial court must dismiss the claim with
prejudice.  See id.
§ 74.351(b).[2]

            We review a trial court’s denial of a motion to
dismiss under section 74.351 for abuse of discretion.  Group v.
Vicento, 164 S.W.3d 724, 727 (Tex. App. Houston [14th Dist.] 2005, pet.
denied).  However, when resolution of an issue requires interpretation
of a statute, we review under a de
novo standard.  Mokkala v. Mead, 178 S.W.3d
66, 70 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).   In construing a
statute, our objective is to determine and give effect to the legislature’s
intent.  See Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525,
527 (Tex. 2000).  If possible, we must ascertain that intent from the language
the legislature selected and should not refer to extraneous matters for intent
not expressed in the statute.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the interpretation supported by the plain
meaning of the words.  See St. Luke’s Episcopal Hosp. v. Agbor, 952
S.W.2d 503, 505 (Tex. 1997).  

B.   Analysis

The crux of Dr. Nowzaradan’s argument is that gross negligence and
ordinary negligence are separate causes of action, each requiring a section
74.351 report.  He relies heavily on this court’s opinion in Olin Corp. v. Dyson, 678 S.W.2d 650 (Tex. App.—Houston [14th Dist.] 1984), rev’d on other
grounds, 692 S.W.2d 456 (1985).  In Dyson, this court determined
there was factually insufficient evidence to support the jury’s gross-negligence finding. 
Id. at 659.  Instead of remanding for a new trial on all issues, this
court remanded only the gross negligence issue, concluding, “The issue of gross
negligence is separable from the rest of the controversy, and a partial remand
would not result in unfairness to the parties.”  Id.  This court further
explained, “[W]e believe negligence and gross negligence to constitute two
separable cause of actions as gross negligence requires proof of the mental
attitude of the defendant and ordinary negligence does not and the means by
which damages are assessed for each action is different.”  Id. (emphasis
added).

At least two courts of appeals have concluded that Olin was
overruled by Transportation Insurance Co. v. Moriel, 879 S.W.2d 10 (Tex.
1994).  See Williams v.
LifeCare Hosps. of N. Tex., L.P., 207
S.W.3d 828, 834–35 (Tex. App.—Fort Worth 2006, no pet.); Prati v. New
Prime, Inc., 949 S.W.2d 552, 557–58 (Tex. App.—Amarillo 1997, pet.
denied).  In Moriel, the supreme
court determined that trials involving a claim for punitive damages should be
bifurcated, whereby the jury first determines liability for actual and punitive
damages and the amount of actual damages and then determines the amount of
punitive damages.  879 S.W.2d at 30.  In 1995, the legislature codified this
holding.  See Act of April 6, 1995 74th Leg., R.S., ch. 19, § 1, 1995
Tex. Gen. Laws 108, 112 (codified at Tex. Civ. Practice & Remedies Code
Ann. § 41.009); see also Columbia Med.
Ctr. of Las Colinas, Inc. v. Hogue, 271
S.W.3d 238, 248 (Tex. 2008) (recognizing applicability of Chapter 41 of
the Civil Practice and Remedies Code when gross negligence was asserted in
medical-malpractice case).  Later, the supreme court was asked to decide whether an
appellate court erred by remanding only a gross-negligence allegation for a new
trial.  Ford Motor Co. v. Miles, 967 S.W.2d 377, 379 (Tex. 1998). 
The majority did not reach the issue, but in a concurring opinion joined by two
justices, Justice Gonzalez cited Moriel and opined that “[i]t would not
be fair to have a new trial simply on the defendant’s state of mind” because
“negligence and gross negligence are not separable causes of action but are
inextricably intertwined.”  Id. at 390 (Gonzalez, J., concurring).

Although our court has recognized the supreme court’s bifurcation
procedure established in Moriel,[3]
we have not specifically addressed whether Olin is binding authority in
light of Moriel.  In Crown
Central Petroleum Corp. v. Coastal Transport Co., we cited Moriel and ultimately remanded the
case for a new trial pertaining only to the gross-negligence allegation.  38
S.W.3d 180, 191 (Tex. App.—Houston [14th Dist.] 2001), rev’d on other
grounds, 136 S.W.3d 227 (Tex. 2004).[4]  However, we did
not cite or consider that portion of Moriel concerning bifurcation of a
trial.  We are bound by prior opinions of this court unless there is a contrary decision by this court en banc or
a higher court.  Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp., 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.]
2010, no pet.).  We now determine whether Olin has been implicitly
overruled by Moriel and other subsequent supreme court decisions.

In 2000, the supreme court held that in order to achieve proportionality between actual and punitive damage
awards, “under Moriel, a jury must decide the amount of punitive damages
based on the totality of the evidence from the liability phase as well as the
punitive damages stage.”  Sw. Ref. Co. v. Bernal, 22 S.W.3d 425,
433 (Tex. 2000).  It would be impossible to give effect to this language
and remand only for a new trial regarding punitive damages.  Furthermore, excepting
certain worker’s compensation cases, it is well established that a finding of
ordinary negligence is prerequisite to a finding of gross negligence.  Sonic
Sys. Int’l, Inc. v. Croix, 278 S.W.3d 377, 395 (Tex. App.—Houston
[14th Dist.] 2008, pet. denied).  In fact, in 2005, the supreme court
prescribed that a jury shall be instructed it “must
unanimously find . . . liability on at least one claim for actual damages that
will support an award of exemplary damages” before such damages may be
awarded.  Tex. R. Civ. P. 226a(III); cf.
Tex. Civ. Prac. & Rem. Code Ann. § 41.003(d) (West Supp. 2009) (providing
jurors must be unanimous regarding liability for, and amount of, exemplary
damages before such damages may be awarded); Tex. R. Civ. P. 292(b) (same).  Construing
these principles together, it is clear the same jury that determines liability and
damages for ordinary negligence must also determine liability and damages for
gross negligence.  Accordingly, we conclude our opinion in Olin was
implicitly overruled.  Accordingly, “negligence and gross negligence are not
separable causes of action but are inextricably intertwined.”  Moriel,
879 S.W.2d at 390 (Gonzalez, J., concurring).

Having concluded that ordinary negligence and gross negligence are not
separate causes of action, we next determine
whether gross negligence is a “health care liability claim” for which a section
74.351 report must be served.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a);
see also Harris Methodist Fort Worth v. Ollie, 270 S.W.3d 720,
729 (Tex. App.—Fort Worth 2008) (“In every claim that falls within the
above definition of a health care liability claim, a claimant shall, not later
than the 120th day after the date the claim was filed, serve on each party or
the party’s attorney one or more expert reports.”).  “Health care liability
claim” is defined as “a cause of action against a health care provider or
physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care [or] health care . . . which proximately
results in injury to or death of a claimant[.]”  Id. § 74.001(a)(13).  The
term “cause of action” refers to underlying facts “giving rise to one or more
bases for suing.”  See In re Jorden, 249 S.W.3d 416, 421–22 (Tex. 2008)
(orig. proceeding) (quoting Black’s Law Dictionary 235 (8th ed. 2004)).  In a claim of ordinary negligence based on medical malpractice, the essential elements are (1) a duty by the
physician to act according to a certain standard, (2) a breach of the
applicable standard of care, (3) an injury, and (4) a causal connection between
the breach of care and the injury.  Wilson v. Korthauer, 21 S.W.3d
573, 579 n.3 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  In
addition to recovering actual damages for the defendant’s ordinary negligence,
a plaintiff may recover punitive damages if he proves the defendant was grossly
negligent.  

“Gross negligence” means an act or omission:

(A) which
when viewed objectively from the standpoint of the actor at the time of its
occurrence involves an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and

(B) of which
the actor has actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.

Tex. Civ.
Prac. & Rem. Code Ann. § 41.001(11) (West 2008); see also id. § 74.001(a)(9)
(“‘Gross negligence’ has the meaning assigned by Section 41.001.”).  To
establish gross negligence, “the act or omission complained of must depart
from the ordinary standard of care to such an extent that it creates an extreme
degree of risk of harming others.”  Columbia Med. Ctr. of Las Colinas,
Inc. v. Hogue, 271 S.W.3d 238, 248 (Tex. 2008) (emphasis added).

In the medical-malpractice context, the standard of care is the action an
ordinary physician would perform under the same or similar
circumstances.  See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 880 (Tex. 2001); see also Benish v. Grottie, 281 S.W.3d
184, 191 (Tex. App.—Fort Worth 2009, pet. denied) (“[T]he medical standard
of care is an element of a plaintiff’s medical negligence cause of action,
setting the standard against which the factfinder measures the defendant’s
conduct.”).  Therefore, to prove gross negligence in a medical-malpractice suit,
the plaintiff must first establish that the physician’s act or omission fell
below the standard of care an ordinary physician would have fulfilled under the same or similar
circumstances.  Then the plaintiff must prove the physician’s act
or omission departed from that standard to such an extent that the
patient was subjected to an extreme degree of risk of harm.  See Hogue, 271
S.W.3d at 248.  The medical standard of care is the same for ordinary
negligence and gross negligence, the difference being the extent to which the physician breached
the standard.[5]

Additionally, the causation element is the same for ordinary negligence
and gross negligence.  A plaintiff is not required to prove that the
defendant’s gross negligence actually caused a serious injury; rather, the
plaintiff must only prove that the act or omission subjected the patient to an
extreme degree of risk of harm.  See Tex. Civ. Prac. & Rem. Code
Ann. § 41.001(11).  Therefore, the only causation element a plaintiff alleging
gross negligence must prove is that the defendant’s breach of the ordinary
standard of care proximately caused actual damages.  See Croix, 278
S.W.3d at 395 (recognizing finding of ordinary negligence is prerequisite
to finding of gross negligence).

Moreover, we note that a gross-negligence finding is relevant only to an
assessment of punitive damages, Newman v. Tropical Visions, Inc., 891
S.W.2d 713, 721 (Tex. App.—San Antonio 1994, writ denied), and punitive
damages are not available until a plaintiff proves his entitlement to actual
damages.  See Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a) (West
2008) (“[E]xemplary damages may be awarded only if damages other than nominal
damages are awarded.”); AVCO Corp., Textron Lycoming Reciprocating
Engine Div. of AVCO Corp. v. Interstate Sw., Ltd., 251 S.W.3d 632,
662 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (same).   

Succinctly, an amended pleading that includes allegations of gross
negligence does not constitute a “cause of action against a health care
provider or physician for treatment, lack of treatment, of other claimed
departure from accepted standards of medical care . . . which proximately
results in injury to or death of a claimant.” Id. § 74.001(a)(13). 
Instead, allegations of gross negligence support a claim for punitive damages
against a physician based on the extent to which the ordinary standard of care has been
breached.  But see Heriberto
Sedeno, P.A. v. Mijares, 333
S.W.3d 815, 821–22, 825 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (determining
ordinary and gross-negligence claims are both health care liability claims
under section 74.351 without addressing the intertwined relationship
between the claims).  Stated differently,
gross negligence necessarily amounts to a heightened degree of ordinary
negligence.  See Newman, 891 S.W.2d at 721 (“[N]o exact line can be
drawn between negligence and gross negligence.  The difference between the two
forms of negligence is one of degree rather than kind.” (citation omitted)); Shell
Oil Co. v. Humphrey, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th
Dist.] 1994, writ denied) (“With ordinary negligence, the actor fails to use
ordinary care.  Gross negligence, on the other hand, involves a more extreme
departure from ordinary care.” (citation omitted)).

Our conclusion is consistent with the language of section 74.351, which
requires that an expert opine regarding the manner in which the physician breach
the applicable standard of care and the causal relationship between the breach
and the plaintiff’s injury, not the extent of the breach.  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(6).[6] 
Analogously, our sister courts of appeals have held that a plaintiff is not
required to provide an expert opinion supporting the wilful and wanton element
in cases involving emergency medical care because such proof relates to the
degree a physician or health care
provider deviated from the standard of
care, i.e., the standard of proof.[7]
See Benish, 281 S.W.3d at 192; Baylor Med. Ctr. at Waxahachie,
Baylor Health Care Sys. v. Wallace, 278 S.W.3d 552, 556 (Tex.
App.—Dallas 2009, no pet.); Bosch v. Wilbarger Gen. Hosp., 223 S.W.3d
460, 464 (Tex. App.—Amarillo 2006, pet. denied).

We note that health care liability plaintiffs are required to serve an
expert report when they assert a claim for malicious credentialing, Garland
Community Hospital v. Rose, 156 S.W.3d 541, 542 (Tex. 2004), an element of
which is that the defendant acted with malice in breaching the standard of care
for credentialing.  See Tex. Occ. Code Ann. § 160.010(b) (West Supp.
2009); see also Romero v. KPH Consol., Inc., 166 S.W.3d 212,
225 (Tex. 2005); Moreno v. Quintana, 324 S.W.3d 124,
135 (Tex. App.—El Paso 2010, pet. denied).[8] 
In Rose, the court also held, “When a plaintiff’s credentialing
complaint centers on the quality of the doctor’s treatment, as it does here,
the hospital’s alleged acts or omissions in credentialing are inextricably
intertwined with the patient’s medical treatment and the hospital’s provision
of health care. . . .  Indeed, without negligent treatment, a negligent
credentialing claim could not exist.”  Rose, 156 S.W.3d at 546 (emphasis
added).

We mention Rose because we have concluded that a gross-negligence
claim is inextricably intertwined with, but nonexistent without, a claim based
on ordinary negligence and is not a claim for which an expert report is
required under section 74.351.  However, the difference between allegations of
malicious credentialing and allegations of gross negligence renders our holding
congruent with Rose.  As previously noted, proof of gross negligence to
support a claim for punitive damages pertains to the extent to which a defendant
breached the ordinary standard of care.  Contrarily, even if malicious
credentialing is dependent on and intertwined with the physician’s negligent
treatment, it is a separate cause of action for compensatory damages involving
a unique standard of care—whether the defendant hospital evaluated a physician in a
reasonably prudent manner.  Id.  Thus, Rose is distinguishable. 

Finally, we address Dr. Nowzaradan’s arguments that a claim for gross
negligence is particularly burdensome and expensive for physicians because
a plaintiff is afforded the right to pursue discovery related to the physician’s net
worth, the physician may not be covered by insurance, and the physician is
subjected to scrutiny by the Texas Medical Board or other entities.  In light
of these possible repercussions, Dr. Nowzaradan argues that allowing claimants
to pursue gross-negligence claims without the burden of an expert report, contravenes
the purpose of the Texas Medical Liability Act to limit the negative effects of
medical-malpractice lawsuits by expeditiously eliminating frivolous health care
liability claims.  See Samlowski v. Wooten, 332 S.W.3d 404, 410 (Tex.
2011).

These considerations do not justify a conclusion that gross negligence
constitutes a separate health care liability claim requiring a timely served expert
report.  The complimenting purpose of the Texas Medical Liability Act is to
preserve health care liability claims with potential merit.  Id.  When a
plaintiff’s expert report provides a fair summary of the applicable standard of
care, the manner in which the physician breached the standard, and the causal connection
between the breach and a plaintiff’s injuries, the plaintiff has established the
potential merit of his claim for ordinary negligence.  The plaintiff’s gross-negligence
claim merely involves a heightened degree of the same negligence. 
Additionally, we note that legitimate concerns surrounding net-worth discovery
and related issues can be effectively addressed through the trial court’s
discretion to supervise and establish limits on such discovery. See In re
Jacobs, 300 S.W.3d 35, 47 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding);
see also id. at 52 (Sullivan, J., concurring) (“Trial courts have the
necessary management tools to control the sequence, timing, and scope of
discovery to minimize burden, maximize efficiency, and protect privacy
rights.”).  Accordingly, we overrule Dr. Nowzaradan’s sole issue and affirm the
trial court’s order denying Dr. Nowzaradan’s motion to dismiss.

                                                                        

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.









[1] In her third-amended
petition, Ryans added a section entitled “Defendants’ Gross Neglect/‘Conscious
Indifference.’”  We construe this section as adding only gross negligence
because conscious indifference is merely an element of gross negligence.





[2] If a claimant is deemed
to have failed to serve a report because the report he served was deficient, the
trial court may grant the claimant one thirty–day extension to cure the
deficiency. Tex. Civ. Prac. & Rem. Code Ann. §
74.351(c).  This subsection is not applicable in the present case.





[3] See In
re Jacobs, 300 S.W.3d 35, 42
n.4 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); Knox v.
Taylor, 992 S.W.2d 40, 65 (Tex. App.—Houston [14th Dist.] 1999, no
pet.); Convalescent Servs., Inc. v. Schultz, 921 S.W.2d 731, 739–40 (Tex.
App.—Houston [14th Dist.] 1996, writ denied). 





[4] Dr. Nowzaradan argues
that our court reaffirmed its opinion that negligence and gross negligence are
separate claims in Rosen v. National Hot Rod Association—a case decided
after Moriel was issued.  No. 14-94-00775-CV, 1995 WL 755712, at *7 n.1
(Tex. App.—Houston [14th Dist.] Dec. 21, 1995, writ denied) (not designated for
publication) (citing Dyson, 678 S.W.2d at 659).  However, Rosen
has no precedential value because it was an unpublished opinion issued prior to
January 1, 2003.  See Tex. R. App. P. 47.7(b).





[5]  We recognize that gross negligence has been variously
described as a “lower standard of care” than ordinary negligence.  Jackson
v. Axelrad, 221 S.W.3d 650, 655 (Tex. 2007).  However, this concept simply
means it is more difficult to establish that a defendant acted with gross
negligence—not that gross negligence is a separate cause of action involving a
unique standard of care.  To be grossly negligent, the defendant must breach
the ordinary standard of care to a greater degree.      





[6]  We recognize that an
expert opinion may ultimately be required to prove the extent to which a physician’s
negligence departed from the standard of care.  See, e.g., Birchfield
v. Texarkana Mem’l Hosp., 747 S.W.2d 361, 365 (Tex. 1987) (concluding
expert may testify that defendant’s conduct constituted gross negligence); Pack
v. Crossroads, Inc., 53 S.W.3d 492, 500 (Tex. App.—Fort Worth
2001, pet. denied) (“[E]xpert testimony is required to prove negligence or
gross negligence unless the form or mode of treatment is a matter of common
knowledge, or the matter is within the experience of a layperson.”). 
Nevertheless, if we interpreted section 74.351(r)(6) to require an opinion
regarding the extent of the defendant’s breach and degree of risk
involved, we would judicially amend the statute to add a requirement neither
expressly nor implicitly contained in the language.  See Lee v. City
of Houston, 807 S.W.2d 290, 295 (Tex. 1991) (“A court may not judicially
amend a statute and add words which are not implicitly contained in the
language of the statute.”).





[7] See Tex. Civ.
Prac. & Rem. Code Ann. § 74.153.





[8] “Malice” is even more
difficult to prove then “conscious indifference” because it requires proof of
“a specific intent by the defendant to cause substantial injury or harm
to the claimant.”  Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (emphasis
added); Romero, 166 S.W.3d at 225.